Filed 8/29/18

CERTIFIED FOR PUBLICATION


COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| Estate of JOHN O'CONNOR, Deceased. | D071284 |
| KEVIN O'CONNOR, as Executor, etc., | |
| Petitioner and Respondent, | (Super. Ct. No. 37-2015-00003609-PR-PW-CTL) |
| v. | |
| BRIAN O'CONNOR et al., | |
| Objectors and Appellants. | |

APPEALS from orders of the Superior Court of San Diego County, Jeffrey S. Bostwick, Judge.  Affirmed.

Palmieri, Tyler, Wiener, Wilhelm & Waldron, Don Fisher and Elise Malia Kern for Appellants.

Roehl & Glowacki, Cynthia Roehl, John P. Glowacki; Sacks, Glazier, Franklin & Lodise and Margaret Glahn Lodise for Respondent.

Appellants Brian O'Connor and Astrid O'Connor Bassett appeal from orders (1) declaring that decedent John O'Connor's power of appointment exercised in his will complied with the requirements of Probate Code[1] section 632 and (2) for probate of his will. The sole question for our independent review arising out of both appeals is whether the language in the decedent's will—"I exercise any Power of Appointment which I may have over that portion of the trust or trusts established by my parents for my benefit or any other trusts for which I have Power of Appointment"—constitutes a valid and effective exercise under section 632, which requires, if directed by the instrument granting the power, that the exercise include "a specific reference to the power [of appointment] or to the instrument that created the power . . . ." We conclude the language of decedent's will contains enough detail to discern his conscious exercise of the particular power of appointment granted to him, and thus complied with the requirements of both the granting instrument and section 632 that he make a specific reference to the power of appointment. Accordingly, we affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

We take much of the underlying facts from the referee's statement of decision, which was incorporated into the probate court's order. (*Mountain Air Enterprises, LLC v. Sundowner Towers, LLC* (2017) 3 Cal.5th 744, 748.) We disregard factual assertions by the parties that are not supported by references to the record. (*McOwen v. Grossman*

_____

[1] Undesignated statutory references are to the Probate Code.

2

(2007) 153 Cal.App.4th 937, 947 ["Statements of fact that are not supported by references to the record are disregarded by the reviewing court"].)

Arthur O'Connor and Hildis O'Connor were the parents of Brian O'Connor, Astrid O'Connor Bassett, John O'Connor, Kevin O'Connor and Eric O'Connor.[2] In 1979, Arthur and Hildis O'Connor created the Arthur P. O'Connor and Hildis M. O'Connor Family Trust (the Trust), which was amended and restated in August 1984 (the 1984 amendment), and again in April 1989 (the 1989 amendment). The primary asset of the Trust was an interest in a limited partnership that owns an apartment complex in San Diego. The Trust contemplated creation of a survivor's trust, a marital deduction trust, and an insurance trust upon the death of either parent, who were then the Trust's co-trustees.

The 1989 amendment allocated equal shares of the Trust estate to each living child, then directed that they be held and administered in one trust for Brian, Astrid and Kevin, and a separate trust for John, as to which the trustee would pay $1,000 per month for John's benefit. It designated Brian, Astrid and Kevin as successor co-trustees of the Trust. The 1989 amendment also granted John a power of appointment as follows: "Upon the death of JOHN N. O'CONNOR, the principal and undistributed net income of his trust shall be distributed to such of his issue, the issue of the Trustors, or the creditors

_____

[2] We refer to the parties by their first names for clarity, and intend no disrespect. Eric predeceased his parents.

3

of his estate, either outright or in trust, as he shall appoint by a will specifically referring to and exercising this general testamentary power of appointment."[3]

Upon Hildis's death in 1992, the Trust by its terms divided into the marital deduction subtrust (Hildis's subtrust) and a survivor's subtrust (Arthur's subtrust). Arthur also created the insurance trust holding his life insurance policies, the proceeds of which would be managed and distributed for John's benefit. At the same time, Arthur prepared a second amendment to his subtrust giving the trustees discretion to distribute (or not distribute) net income for John's health, maintenance, support, welfare and comfort, and removing the provision giving John a power of appointment over his interest in that subtrust. Thus, under Hildis's subtrust, the trustees were required to make lifetime payments of $1,000 per month for John's benefit and John had a power of appointment. Under Arthur's subtrust, the trustees had discretion to pay income and principal as they deemed appropriate, but John no longer had a power of appointment. John's total interest in the subtrusts included a 12.25 percent share in the apartment complex limited partnership.

John died in November 2014. He had no children and was survived only by his wife. On November 12, 2014, approximately two weeks before his death, he signed a

---

[3] That provision continued: "Any property not so appointed shall be distributed, free of trust, subject to section 10.3 below, to the then living issue of JOHN N. O'CONNOR, by right of representation, or, if there are none, to the then living issue of the Trustors, by right of representation; provided, however, that any share which would otherwise be distributed to a person for whose benefit a trust is then being administered under this trust shall thereafter be administered according to its terms."

4

will bequeathing his entire estate to his wife and appointing Kevin as his agent. John's will provides: "I exercise any Power of Appointment which I may have over that portion of the trust or trusts established by my parents for my benefit or any other trusts for which I have Power of Appointment I exercise [*sic*] in favor of my brother Kevin O'Connor. If possible, I request it be distributed to him outright, or if not possible, that he receive all income and have a maximum power of invasion for his health, comfort and welfare."

In early 2015, Kevin petitioned to probate John's will and sought to be appointed executor of John's estate. Kevin's petition sought to establish the validity of both the will and the power of appointment expressed in it. Brian and Astrid objected and filed a will contest, in part seeking to invalidate the power of appointment as not complying with section 632. They argued that the will's language referring to "any Power of Appointment which I may have" was only a general reference and thus invalid.

Thereafter, Kevin petitioned to reform John's will to conform to his intent to exercise the power of appointment granted to him by the Trust. Kevin asked that the will be amended to refer to John's power of appointment under the Trust with sufficient specificity so that his testamentary intent would be carried out as he expected.

The parties stipulated to having a judicial referee hear the power of appointment matters, and the issues were tried over the course of four days in 2015 and 2016. Thereafter, the referee issued a statement of decision ruling that the reference in John's will met the conditions established by the Hildis subtrust and the requirements of section

5

632. In part, it found: "John's Will specifically described the power he was attempting to exercise as 'any Power of Appointment which I may have over that portion of the trust or trusts established by my parents for my benefit or any other trusts for which I have Power of Appointment . . . .' There was not a scintilla of evidence provided in the [h]earing that would suggest there was any confusion in John's mind as to the precise power he was exercising and the precise document in which the power was created. There was only one trust (consisting of two sub-trusts) and only one power of appointment that could meet the description contained in John's Will. The reference in John's Will met the conditions established by the Hildis Sub-Trust and the requirements of [section] 632. The additional phrase, 'or any other trusts for which I have Power of Appointment' does not change this result. This phrase is an independent clause and does not in any way modify the specific reference it follows." The referee further found Kevin had established by clear and convincing evidence that John intended to exercise the power of appointment provided for in the Trust in Kevin's favor, and that it was contrary to John's desires to have Astrid and Brian receive any part of his share of the Hildis subtrust. The referee ruled failing to reform the will would result in a distribution of John's beneficial interest in the subtrust contrary to John's intention.

In July 2016, the probate court adopted the referee's statement of decision concerning the power of appointment as its own decision, and declared Kevin the prevailing party. It ruled the reformation issue was rendered moot by its decision as to

6

the power of appointment.  In January 2017, the probate court granted Kevin's petition

for probate and entered its order for probate appointing Kevin executor of John's will.

Brian and Astrid filed these appeals from the probate court's orders.

DISCUSSION

I. *Standard of Review*

The issue presented—whether John's will language constitutes a "specific

reference to the power or to the instrument that created the power"—is a matter of

interpreting and construing the language of both Hildis's subtrust and section 632.  We

interpret the Hildis subtrust, as to which the parties did not present extrinsic evidence

surrounding its execution, as a matter of law.  (*Estate of Dodge* (1971) 6 Cal.3d 311,

318; *Parsons v. Bristol Development Co.* (1965) 62 Cal.2d 861, 865; *Aviles v.

Swearingen* (2017) 16 Cal.App.5th 485, 490; *Ammerman v. Callender* (2016) 245

Cal.App.4th 1058, 1073.)  The paramount rule in construing the trust is to determine the

trustor's intent from the whole of the instrument and in accordance with applicable law.

(§ 21102, subd. (a); *Ammerman*, at pp. 1073-1074; *Estate of Cairns* (2010) 188

Cal.App.4th 937, 944.)  We " ' " 'consider the circumstances under which the document

was made so that the court may be placed in the position of the . . . trustor whose

language it is interpreting, in order to determine whether the terms of the document are

clear and definite, or ambiguous in some respect.' " ' "  (*Ammerman*, at p. 1074.)

As for our interpretation of section 632, the applicable statutory construction

standards are settled:  " ' " 'A fundamental rule of statutory construction is that a court

7

should ascertain the intent of the Legislature so as to effectuate the purpose of the law.' " ' [Citation.] ' "The statutory language itself is the most reliable indicator, so we start with the statute's words, assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs.' " [Citation.] 'If "the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." ' " (*Giammarrusco v. Simon* (2009) 171 Cal.App.4th 1586, 1610; *Even Zohar Constr. & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 837-838.)

" ' "[T]he 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose." ' [Citation.] '[W]e " 'must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute . . . .' " ' [Citation.] ' "We examine the history and the background of the statutory provision in order to ascertain the most reasonable interpretation of the measure." ' [Citation.] In addition to the statute's plain meaning, ' "legislative history provides additional authority" ' in construing a statute." (*Giammarrusco v. Simon*, *supra*, 171 Cal.App.4th at p. 1610.) " ' "Explanatory comments by a law revision commission are persuasive evidence of the intent of the Legislature in subsequently enacting its recommendations into law." ' " (*Id.* at p. 1612, quoting *Catch v. Phillips* (1999) 73 Cal.App.4th 648, 654.)

8

The parties agree that we independently review the question of whether the power of appointment language in John's will conforms to section 632. (See *Poole v. Orange County Fire Authority* (2015) 61 Cal.4th 1378, 1384 [court reviews de novo application of statute to undisputed facts]; *Estate of Wilson* (2012) 211 Cal.App.4th 1284, 1290 [application of statutory standard to undisputed facts and questions of statutory interpretation are questions of law an appellate court reviews de novo].)

## II. *Legal Principles*

" 'A power of appointment is a power conferred by the owner of property (the "donor") upon another person (the "donee") to designate the persons ("appointees") who will receive the property [("appointive property")] at some time in the future.' " (*Sefton v. Sefton* (2012) 206 Cal.App.4th 875, 882 (*Sefton I*); *Estate of Daily* (1982) 130 Cal.App.3d 993, 998.) Such a power can be general—exercisable in favor of anyone, including the holder of the power or that person's estate[4]—or limited—exercisable only in favor of the person or class specified in the instrument creating the power. (*Giammarrusco v. Simon*, *supra*, 171 Cal.App.4th at p. 1595.) A trust can be the "creating instrument" that "creates or reserves the power of appointment." (See § 610, subd. (c).)

---

[4] Before 2017, the holder of the power was referred to as the "donee" (former § 610, subd. (d)). After 2017, the statute designates that person as the "powerholder." (See §§ 610, subd. (g), 634, 640, 641, subd. (b); as amended by Stats. 2016, ch. 81 (AB 2846), § 8, eff. Jan. 1, 2017.)

9

The California Powers of Appointment Act (the Act), operative July 1, 1970, governs the creation and exercise of powers of appointment. (See *Estate of Berdrow* (1992) 5 Cal.App.4th 637, 642 [under former Civ. Code, § 1380.1, et seq.]; *Sefton I*, *supra*, 206 Cal.App.4th at p. 883.) The Act continues the common law as to powers of appointment unless modified by statute. (§ 600.) Under the Act, a power of appointment can be exercised only by complying with any requirements as to the manner, time and conditions of the exercise specified in the creating instrument. (§ 630.[5])

Section 632 provides, "If the creating instrument expressly directs that a power of appointment be exercised by an instrument that makes a specific reference to the power or to the instrument that created the power, the power can be exercised only by an instrument containing the required reference." The Law Revision Commission comment on section 632 states: "Section 632 continues former Civil Code Section 1385.2 without substantive change. This section permits a donor to require an express reference to the power of appointment to ensure a conscious exercise by the donee. In such a case, the specific reference to the power is a condition to its exercise. This condition precludes the use of form wills with 'blanket' clauses exercising all powers of appointment owned by the testator. The use of blanket clauses may result in passing property without

---

[5]     Section 630 provides: "(a) Except as otherwise provided in this part, if the creating instrument specifies requirements as to the manner, time, and conditions of the exercise of a power of appointment, the power can be exercised only by complying with those requirements. [¶] (b) Unless expressly prohibited by the creating instrument, a power stated to be exercisable by an inter vivos instrument is also exercisable by a written will."

knowledge of the tax consequences and may cause appointment to unintended beneficiaries. This section embodies the rule set out in Michigan and Wisconsin law. See Mich.Stat.Ann. § 26.155(104) (Callaghan 1984); Wis.Stat.Ann. § 702.03(1) (West 1981)." (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code (2002 ed.) foll. § 632, p. 333; see also *Relocation of Powers of Appointment Statute* (1991) 21 Cal. Law Revision Com. Rep. 91, 109.)

Though the Act permits a court to excuse compliance with some formal requirements for an appointment under certain conditions, it expressly does not allow courts to excuse compliance with a donor's specific reference requirement. (§ 631, subd. (b).[6]) In any case, however, the law requires that exercise of a power of appointment reflect "manifestation of the powerholder's intent to exercise the power," which "exists in any of the following circumstances: [¶] (1) The powerholder declares, in substance, that the powerholder exercises specific powers or all the powers the powerholder has. [¶] (2) The powerholder purports to transfer an interest in the appointive property that the powerholder would have no power to transfer except by virtue of the power. [¶] (3) The powerholder makes a disposition that, when considered with reference to the property

---

6       Section 631 provides: "(a) Where an appointment does not satisfy the formal requirements specified in the creating instrument as provided in subdivision (a) of Section 630, the court may excuse compliance with the formal requirements and determine that exercise of the appointment was effective if both of the following requirements are satisfied: [¶] (1) The appointment approximates the manner of appointment prescribed by the donor. [¶] (2) The failure to satisfy the formal requirements does not defeat the accomplishment of a significant purpose of the donor. [¶] (b) This section does not permit a court to excuse compliance with a specific reference requirement under Section 632."

11

owned and the circumstances existing at the time of the disposition, manifests the powerholder's understanding that the powerholder was disposing of the appointive property." (§ 640, subds. (a), (b).) The circumstances described in section 640 are "illustrative, not exclusive." (§ 640, subd. (c).)

The Court of Appeal in *Estate of Eddy* (1982) 134 Cal.App.3d 292 (*Eddy*) applied the Act (former Civ. Code, §§ 1385.1, 1385.2, 1386.2, now Prob. Code, §§ 630, 632, 641) to invalidate as insufficiently specific a purported power of appointment by a wife under her predeceased husband's will. (*Eddy*, at p. 294.) The husband's will, which had divided separate and community property into two trusts under specified conditions, provided: " 'If my said wife shall survive me, she shall have the power to appoint, by Will or Codicil thereto, all or any part of the principal and undistributed income of Trust 'A,' free of the trust, in favor of her estate, or any persons whom she shall designate. The power shall be deemed to have been exercised *only if by specific reference thereto in her Will or Codicil*, my said wife shall express her intention to exercise the same.' " (*Id.* at p. 295, italics added.) The wife's will provided that her husband should receive all of her property if he survived her, and then stated: " 'If my said husband does not survive me, then all of the property I own, including, but not by way of limitation, *any property over which I have a power of appointment*, shall go as follows: . . . .' " (*Id.* at p. 296, italics added.)

After the wife's death, her will's administrator petitioned to determine whether she had validly exercised the power of appointment over the property in trust A. (*Eddy*,

*supra*, 134 Cal.App.3d at p. 296.)  The probate court ruled she had validly exercised the power.  (*Ibid*.)

A majority of the Court of Appeal disagreed and reversed.  (*Eddy*, *supra*, 134 Cal.App.3d at pp. 298, 303.)  Finding no ambiguity in either the husband's will or the applicable statutes, it held the language in the wife's will did not suffice to constitute a specific reference to the power of appointment given to her by her husband.  (*Id*. at pp. 298, 301.)  The court pointed out that while the husband's will did not require a reference to his will, "[i]t did, however, require a specific reference to the power of appointment, not just a general manifestation of intent to exercise the power."  (*Id*. at p. 298.)  It rejected the argument that the language met that standard:  "The quoted language in Mrs. Eddy's will is not even a direct general reference to all powers of appointment she might have; it refers to *property* over which she has a power of appointment.  Patently, that is not a specific reference to the power of appointment given her by Mr. Eddy . . . ."  (*Id*. at p. 300.)  The court stated that even were it to construe the language as a general reference to any and all powers of appointment, the will's language would not suffice because the Law Revision Commission had stated a specific reference requirement " 'precludes the use of form wills with "blanket" clauses exercising all powers of appointment owned by the testator.' "  (*Ibid*., quoting Cal. Law Revision Com. com., West's Ann. Civ. Code (1982 Supp.) foll. former § 1385.2, p. 96.)

The *Eddy* majority adopted the reasoning of the Virginia Supreme Court in *Holzbach v. United Virginia Bank* (1975) 219 S.E.2d 868, which rejected the notion that

13

the donee's intent controlled:  " 'The test is not whether donee intended to appoint but rather whether donee *manifested* her intent in the manner prescribed by donor, *i.e.*, by making specific reference "in her will" to the power granted by donor's will . . . .' " (*Eddy*, *supra*, 134 Cal.App.3d at p. 301, quoting *Holzbach*, at p. 871.)  The majority in *Eddy* cited *Holzbach's* reasoning in invalidating a donee's attempt to exercise a power of appointment as insufficiently complying with the donor's requirement for a " 'specific reference to the powers granted herein.' "  (*Holzbach*, at pp. 870, 872.)  The donee's will in *Holzbach* provided:  " 'I give and bequeath unto my beloved sister . . . all of my estate, be it real, personal or mixed, or in which I may have a power of appointment of whatsoever nature, kind or description, and wheresoever the same may be located, in fee simple and absolutely.' "  (*Id*. at p. 870.)  *Eddy* observed that the *Holzbach* court explained that while the donee's will "makes general reference to powers of appointment, it makes no specific reference to donor, to his will, or to the power created by his will." (*Eddy*, at p. 301, citing *Holzbach*, at p. 872.)[7]

---

[7]    The dissenting justice in *Eddy* decided that the statutory scheme merely reinforced the requirements imposed by the husband's will, and that the requirement of an express reference was to assure a conscious exercise by the donee. (*Eddy*, *supra*, 134 Cal.App.3d at pp. 303, 305, 318.)  In part, that justice stated that the wife's reference to "a power of appointment" satisfied the husband's intention of avoiding an inadvertent exercise by wife; that the facts showed wife made a knowing and deliberate exercise of her power, and thus validly exercised her power. (*Id*. at p. 316.)  Pointing out the statutes distinguished between requiring a specific reference "to the power" and "to the instrument that created the power," the dissent stated that requiring the wife "to make a more specific reference to the power which was created in her husband's will would be tantamount to requiring her to specifically refer 'to the instrument that created the power,' " a requirement the husband's will did not contain. (*Id*. at p. 317.)

14

### III.  *Contentions*

Appellants contend John's will does not comply with section 632's requirements. They maintain that in order for the will to do so, it "must specifically refer to 'The First Amendment to The Arthur P. O'Connor and Hildis M. O'Connor Family Trust established June 6, 1979 and amended and restated on August 8, 1984.' "  Appellants argue the actual clause, exercising "any Power of Appointment which I may have over that portion of the trust or trusts established by my parents or any other trusts for which I have Power of Appointment," is too vague and constitutes a form or " 'blanket' " clause purporting to exercise powers that may or may not exist, which is not in keeping with the Law Revision Commission comments that require a specific reference to the power as a condition to its exercise.  They assert John's attorney drafted the language in that way out of confusion over which trusts granted John a power of appointment, and intended to write a more specific clause, but had to hurry to complete the documents.  According to appellants, *Eddy*, *supra*, 134 Cal.App.3d 292 is "directly on point" in support of their position, and establishes that the question does not turn on John's intent, but the words of the creating instrument.  They rely on out-of-state authorities, including *Holzbach v. United Virginia Bank*, *supra*, 219 S.E.2d 868, invalidating language assertedly similar to that used by John in this case.

Kevin distinguishes *Eddy*, arguing it is unhelpful because John's exercise of his power of appointment is significantly different.  Kevin asserts John's exercise refers to the donors (their parents), their document (the trust) and his power, when he referred to

"any power of appointment which I may have over that portion of the trust." He points to cases from other jurisdictions that he argues have factual similarity to the present case in which the courts found valid exercises by donees who were required to make specific references to the power. Kevin argues John's exercise was not a blanket clause in a form will as the record indicates John was aware of the power, discussed it with his attorney, and referred to it specifically in his will. Nor, Kevin argues, was John's exercise invalidated by the reference to other trusts or his desire to provide for his wife. Kevin distinguishes the cases appellants rely upon, stating in those the donee either completely failed to reference a power of appointment, or made only a generic reference to "any power of appointment." Kevin maintains that under California law an approximate reference to the creating instrument and power suffices. Finally, Kevin asks that if we determine the power was not sufficiently exercised, we direct the trial court to consider the referee's findings that the will could be reformed given evidence of John's intent.

IV. *Analysis*

Hildis's subtrust directs that John's exercise be "by a will specifically referring to and exercising this general testamentary power of appointment." As the donee did in *Eddy*, *supra*, 134 Cal.App.3d 292, Hildis thus restricted the manner in which John could exercise the power (1) to his will and (2) by specific reference to "this . . . power. . . ." As we explain, we conclude John's will complied with Hildis's subtrust's "requirements as to the manner, time, and conditions of the exercise of a power of appointment" (§ 630, subd. (a)), including the specific reference requirement.

16

The subtrust's language does not require John to make an appointment by specific reference to the *trust* or the *instrument* creating the power. The "required reference" of section 632, therefore, is merely to the subtrust's power of appointment. We thus reject outright appellants' argument that to comply with section 632, John was required to recite in his will that he exercised the power of appointment contained in "The First Amendment to The Arthur P. O'Connor and Hildis M. O'Connor Family Trust established June 6, 1979 and amended and restated on August 8, 1984." Such a reference would be to the "instrument that created the power" (§ 632), which was not a requirement of Hildis's subtrust. To hold otherwise would fail "to recognize a distinction between a requirement for a reference to the instrument creating the power and a reference to the power itself, a distinction expressly made in the statutory provisions." (*Eddy*, *supra*, 134 Cal.App.3d at p. 299.) The Legislature's use of the disjunctive "or" indicates that specific reference to the power or to the instrument are independent means by which a donor can restrict a donee's exercise. (*Rubio v. Superior Court* (2016) 244 Cal.App.4th 459, 473 [" ' "The plain and ordinary meaning of the word 'or' is well established. When used in a statute the word 'or' indicates an intention to designate separate, disjunctive categories" ' "]; see also *Eddie E. v. Superior Court* (2015) 234 Cal.App.4th 319, 327; *In re Valerie A.* (2007) 152 Cal.App.4th 987, 1008.)

Hildis's subtrust itself does not define the phrase "specifically referring to . . . this . . . power of appointment," and the parties do not point to evidence of Hildis's intent

on the matter.[8]  Nor did the Legislature define the term "specific reference" or the word "specific" in section 632.  To ascertain what the Legislature meant by such a requirement, we may look to dictionary definitions, construing the language of the statute in context. (*People v. Pennington* (2017) 3 Cal.5th 786, 795; *Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)  "If the words appear susceptible of more than one reasonable construction, we look to other indicia of legislative intent, bearing in mind the admonition that '[t]he meaning of a statute may not be determined from a single word or sentence' [citation] and that apparent 'ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes[.]' " (*People v. Pennington*, at p. 795.)

To "specify" means "to name or state explicitly or in detail."  (Merriam-Webster's Collegiate Dict. (11th ed. 2006) p. 1198; see *In re Julian R.* (2009) 47 Cal.4th 487, 497; see also *People v. Thomas* (1945) 25 Cal.2d 880, 898 [word " 'specific' (adjective) means '[p]recisely formulated or restricted; . . . definite, . . . explicit; of an exact or particular nature' "].)  In explaining the statute's background, the Law Revision Commission also used the synonym "express" to refer to the specificity requirement:  "This section permits a donor to require an *express reference* to the power of appointment to ensure a conscious

---

[8]     Astrid admitted she did not know what her mother meant or her mother's intent when she created the power of appointment for John.  The parties do not point to any extrinsic evidence of the circumstances surrounding Hildis's creation or execution of that provision in her subtrust.  (§ 21102, subd. (c) [law does not limit use of extrinsic evidence as "authorized by law" to determine trustor's intention].)

18

exercise by the donee."  (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code (2002 ed.) foll. § 632, p. 333, italics added.)  The dictionary defines "express" as "directly, firmly, and explicitly stated."  (Merriam-Webster's Collegiate Dict., *supra*, at p. 442.)  These definitions, however, do not shed light on what *level* of specificity is required in describing a particular power of appointment.

We accept the Law Revision Commission comment as an expression of the Legislature's intent on the meaning of a specific reference.  It reflects that the stated purpose of section 632 is to mandate the donor's instructions for a specific reference are followed so that the donor is assured the donee/powerholder consciously exercises a particular power of appointment given him or her.  Hence, the Legislature sought to "preclude[] the use of form wills with 'blanket' clauses exercising all powers of appointment owned by the testator."  (Cal. Law Revision Com. com., 52 West's Ann. Prob. Code (2002 ed.) foll. § 632, p. 333.)  The meaning of section 632's specific reference requirement is elucidated not only by this comment, but also by the statute in context.  As we have stated, section 632 distinguishes a reference to the power alone from a reference to the instrument that created the power.  The alternative language supports a conclusion that the Legislature contemplated that a particular reference to the power, but not the instrument, would suffice; that the statute does not *mandate* identification of the creating instrument.  Thus, we hold that to constitute a sufficiently "specific reference" to the power, a donee's exercise must not merely state that he or she exercises all or any powers of appointment that he or she owns, but contain enough detail

such that it is reasonable to conclude from the words used alone that he or she made an intentional and deliberate, not inadvertent, exercise of the *particular* power or powers of appointment granted to him or her by the donor.

Here, we conclude John's conscious and deliberate exercise of the power of appointment granted to him by Hildis's subtrust is clearly inferable from his will language, "I exercise any Power of Appointment which I may have over that portion of the trust or trusts established by my parents for my benefit or any other trusts for which I have Power of Appointment I exercise [*sic*] in favor of my brother Kevin O'Connor." This language recites not only the existence of a power of appointment, but also the trust and the donors, John's parents. Because John's will refers to his parents specifically and their trust, it cannot reasonably be read as a "blanket" or form clause that would present the danger of John inadvertently or unintentionally exercising the power. Our conclusion is not impacted by the fact the Trust by its own terms eventually separated into subtrusts, that Arthur eliminated the power in the survivor's trust, or that an insurance trust also existed. The requirement was that John specifically refer to the power, not the instrument granting the power, and the language he used is sufficient to discern his conscious exercise of the grant contained in the Trust, which happened to remain only in Hildis's subtrust. In this way, the language of John's will is different from that in *Eddy*, which, as the *Eddy* court pointed out, referred to the *property* over which the wife held a power and not the power itself. (*Eddy*, *supra*, 134 Cal.App.3d at p. 300.) The *Eddy* court's further discussion concerning the specificity requirement is simply dictum.

Though we need not rely on out-of-state authorities such as *Holzbach v. United Virginia Bank*, we observe that the *Holzbach* court found the donee's will did not meet a specific reference requirement imposed by the donor because it made "no specific reference to donor, to his will, or to the power created by his will." (*Holzbach*, *supra*, 219 S.E.2d at p. 872.) John's will, unlike that in *Holzbach*, refers to each of these things. John's will, in short, carries out Hildis's intentions in requiring specificity as a condition to John's exercise of the power of appointment, and complies with the intent of section 632's specificity requirement: to ensure John made a conscious exercise of the particular power granted to him.

Appellants suggest we should consider extrinsic evidence on the matter. They argue that John's estate planning attorney, Thomas O'Keefe, was confused about which trust or trusts granted John a power of appointment, and his testimony explains why he drafted John's will in a "non-specific" manner. Our conclusion that the language of John's will is sufficiently specific to satisfy both Hildis's and the Legislature's intent eliminates the need to consider extrinsic sources surrounding the creation and execution of John's will. But that aside, we do not read O'Keefe's testimony before the referee—in which he described his recollection "as we sit here *today*" and explained he was "foggy *right now*" as reflecting confusion on his part *at the time of drafting* John's will. Indeed, O'Keefe was elsewhere asked whether he found limitations on the persons in whose favor John could exercise the power of appointment when he reviewed the Trust, and answered, "I know it had to reference the existence of the power of appointment." The

testimony indicates he was aware of the trust's specificity requirement. In any event, we read the language drafted by O'Keefe—exercising "any Power of Appointment which I may have . . . "—as O'Keefe's effort to comply with the law's mandate that the donee's exercise manifest his or her intent by "declar[ing], in substance, that the [donee] exercises specific powers or *all the powers the* [*donee*] *has*." (§ 640, subd. (b)(1).) John's exercise is not invalidated by counsel's inclusion of a protective expression of intent, as long as John also made specific reference to the particular power of appointment as required by the Trust. We conclude he has.

Nor did attorney O'Keefe testify that the clause exercising John's power of appointment was a " 'form' will with boilerplate language," as appellants assert. Any such contention is contradicted by the language of John's will, which refers to his parents' trust. Further, as Kevin points out, attorney O'Keefe's testimony reflects that John's power of appointment clause was the product of at least two drafts. According to O'Keefe, he initially prepared an exercise of the power of appointment to benefit John's wife, but when he reviewed the trust documents he realized it was not a permitted exercise, so he edited the language to have Kevin be the beneficiary of John's power of appointment. O'Keefe testified he had prepared an additional draft power of appointment identifying the full formal name of the family trust, but due to the sense of urgency stemming from John's poor health, they prepared the will in a rush and got it to John to sign. Rather than showing counsel's ignorance of the source and extent of John's power granted to him as appellants' assert, the record demonstrates that attorney O'Keefe was

22

fully aware of that information from his review of the amended and restated family trust. Though the language of the will finally signed by John was less specific than counsel's last draft of the power of appointment, it nevertheless contained enough detail to render John's exercise valid under section 632.

Appellants argue that John's exercise of his power of appointment circumvented his parents' testamentary wish that the trust assets would remain within the family. But John exercised his power of appointment in favor of Kevin, who was a permissible beneficiary of the power under the Trust, which contains no limitation on how a beneficiary may use the bequest. Appellants cite no authority permitting a court to invalidate an exercise of a power of appointment that is proper on its face, on grounds that the donee's subjective motive was something other than that objectively expressed in the document.

Nothing in the out-of-state authorities cited by appellant compels us to change our conclusion. First, we are not obligated to consider them. (*Episcopal Church Cases* (2009) 45 Cal.4th 467, 490 ["out-of-state decisions are not binding on this court"]; *Christ v. Schwartz* (2016) 2 Cal.App.5th 440, 447, fn. 2.) But in each of them, unlike here, the required specific reference to the power of appointment was not met as the donee either did not even mention a power of appointment, or made only a generic reference to a power without mentioning the donor or the instrument by which the donor granted the power. (See *In the Matter of the Estate of Burgess* (Utah 1992) 836 P.2d 1386, 1392 [wife's codicil "does not even contain a general reference" and it did not contain "the

23

terms 'power of appointment' or 'marital trust' or any other descriptions thereof that might indicate [wife] was knowingly attempting to exercise her power"]; *Schwartz v. Baybank Merrimack Valley, N.A.* (Mass.App. 1983) 456 N.E.2d 1141, 1143, 1145 [where mother's will required that donee specifically refer to "the power herein given to her," donee's will in which she made no reference at all to any power did not exercise the power of appointment given to her by her mother]; *In re Estate of Smith* (Colo.App. 1978) 585 P.2d 319, 321 [wife's language devising her remaining estate "including any property in which I hold a power of appointment" held insufficient: "Since the wife's will does not make specific reference to her late husband's will or to the power conferred therein, the power was not exercised in the manner prescribed, and therefore was not validly exercised"]; *Schede Estate* (1967) 231 A.2d 135, 137 [donee's language, "I give, devise and bequeath all of the rest, residue and remainder of my property, both real and personal of every kind and nature and of which I may have a power of appointment" held insufficient as not complying with donor's requirement that she "specifically refer[] to this Will . . . ."]; see also *Cessac v. Stevens* (2013) 127 So.3d 675, 676, 680-681 [donee's will stating, "Included in my estate assets are the Stanton P. Kettler Trust, fbo, Sally Christiansen, under will dated July 30, 1970, currently held at the Morgan Stanley Trust offices in Scottsdale, Arizona, and two (2) currently being held at Northern Trust of Florida in Miami Florida" (some capitalization omitted) without mentioning any powers of appointment did not comply with the donor's requirement for a "specific reference to the power herein granted"]; *First National Bank of McMinn County v. Walker* (Tenn.

1980) 607 S.W.2d 469, 475 [donee's will stating, "I bequeath and devise my property, including all property over which I shall have any power of appointment" held insufficient to comply with husband's requirement that her power "shall be exercisable only by specific reference to said power . . . . "]; *Talcott v. Talcott* (Fla. 1982) 423 So.2d 951, 952 [husband's will devising his estate to his wife without reference to the trust or power of appointment given therein held not a valid exercise].)

Other authorities are in accord with our conclusion. (*In re Passmore* (Penn. 1980) 416 A.2d 991, 992-994 [donee's will stating, "I give, bequeath and devise all of my property, of whatever nature and wherever situated, and expressly intend this act to constitute the exercise of any power of appointment which I may possess or enjoy under any Will or trust agreement executed by my husband, Charles F. Passmore" held a "specific and express reference to the power her husband created" and an effective exercise of the power of appointment]; *Shine v. Monahan* (Mass. 1968) 241 N.E.2d 854, 855 [donee's will stating, "All the rest, residue and remainder of my property, including all property of which I have the power of appointment by virtue (of) any will or testament or inter vivos trust executed by my husband, Edward O'Toole, after payment of the aforesaid legacies" held a valid exercise; husband's intent was to prevent an inadvertent exercise of the power, and wife "[p]lainly . . . intended to exercise a power created by her husband in an inter vivos trust. . . . Having in mind the testator's purpose, this was the required specific reference"].)

25

Because we conclude the language of John's will alone contains sufficient detail to constitute a specific reference to the power of appointment granted to him by Hildis's subtrust, we need not consider whether or to what extent extrinsic evidence of John's intent is relevant on the issue. Nor do we need to address whether John's will can or should be reformed under principles of equity. (See *Giammarrusco v. Simon*, *supra*, 171 Cal.App.4th at pp. 1603-1604.)

## DISPOSITION

The orders are affirmed.


O'ROURKE, Acting P. J.

WE CONCUR:


AARON, J.


GUERRERO, J.

26