Filed 5/15/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| Estate of TIMOTHY W. EIMERS, Deceased. | B295609 |
| | (Los Angeles County Super. Ct. No. BP144326) |
| CARYN SALETTA and CHARLES SALETTA,<br><br>　　　Petitioners and Appellants,<br><br>　　　v.<br><br>JAMES N. EIMERS, as Trustee, etc.,<br><br>　　　Objector and Respondent. | |

APPEAL from order of the Superior Court of Los Angeles County, Daniel Juarez, Judge.  Affirmed.

John F. Mounier, Jr. and Elder Protection Attorneys for Petitioners and Appellants.

Law Offices of Jeffrey A. Coleman and Jeffrey A. Coleman for Objector and Respondent.

─────────────

## INTRODUCTION

One who owns property may confer a power of appointment upon persons, the powerholders, to whom the owner gives property.  Under the power of appointment, the powerholders may then designate who will receive the original owner's property at some point in the future.  (*Sefton v. Sefton* (2012) 206 Cal.App.4th 875, 882.)  Sometimes a trustor will create a trust conferring a power of appointment on trust beneficiaries, empowering them to designate to whom they want to give their shares of the trust.  Sometimes a trustor will also require trust beneficiaries to *specifically exercise and refer to* the power of appointment in any will they create in order to designate who should get their trust shares.  This appeal poses the following question:  Where a trust beneficiary creates a will that gives away his trust shares without also specifically referring to the power of appointment as required by the trust, may the court amend or reform that will to include a "specific reference" phrase so as to preserve the validity of the gift?  The trial court answered no.  So do we.

Reforming a will to conform to the testator's true intent is permissible if extrinsic evidence establishes that true intent.  However, we cannot do so in this case because reformation would achieve a work-around of the requirements of Probate Code[1] sections 630, 631, and 632, effectively nullifying them.  These sections, taken together, do not excuse noncompliance.  We therefore affirm.

---

[1] All further statutory references are to the Probate Code, unless otherwise stated.

2

# FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Family Trust*

On September 11, 1991, Norbert Theodore Eimers established the Norbert Theodore Eimers Family Trust (Family Trust).  The Family Trust provides that when Norbert and his wife both died, the trust assets would be divided equally among their children then living.  The Family Trust also puts restrictions on how the children could designate who would get their trust shares at their deaths.  The Family Trust reads as follows:

> "Upon the death of a child, any share held in trust for the child's benefit . . . shall be distributed to or for the benefit of such one or more persons or entities, and on such terms and conditions, either outright or in trust, as said child may provide and *appoint by will specifically referring to and exercising this power of appointment*.  If or to the extent that said child shall have failed to exercise this power of appointment, or an attempted exercise of this power shall have been invalid or ineffective for any reason, or said child shall have released or renounced this power, the property subject to it shall be distributed to or retained in trust for the benefit of the issue of the child . . . .  Should no such issue be then living, such share shall be divided into as many equal parts as there are children of the Trustor then living and children of the Trustor then deceased who have issue then living."  (Italics added.)

Norbert died in1992 and his wife died in 2011.  Timothy William Eimers (decedent) is one of Norbert's children and a beneficiary of the Family Trust.

3

B.      *Decedent's Holographic Will*

On February 8, 2013, decedent wrote out a two and one-half page holographic will.  It provided, in relevant part:

> "I Timothy William Eimers am writing this document as my Last Will and Testament.  I am doing this of my own free will and of sound mind and body.
>
> *"To Charles J. Saletta and Caryn Saletta I hereby leave my shares of the Norbert Theodore Eimers Family Trust.*  I also leave all my other property and any funds I have."  (Italics added.)

Decedent died four months later on June 22, 2013 in Burbank.

C.      *Probate Proceedings in Los Angeles and Sonoma Counties*

On August 15, 2013, in the Los Angeles Superior Court, Charles and Caryn Saletta (the Salettas) filed a petition to probate decedent's holographic will.  On September 10, 2014, the court admitted the holographic will to probate and on November 4, 2014, the court issued the order for probate.

Meanwhile, on December 12, 2013, the trustee of the Family Trust, decedent's brother James N. Eimers (trustee) filed a petition in Sonoma County, where the Family Trust was administered.  In the petition, trustee asked for instructions on whether he could distribute decedent's share of the Family Trust to the Salettas.  Trustee took the position that decedent had not validly exercised the power of appointment in the holographic will, because he failed to specifically refer to this power in the will as required by the terms of the Family Trust.  The court held a two-day bench trial on the petition.  At trial, trustee acknowledged decedent's will "made a reference to the Norbert Theodore Eimers . . . Family Trust," which while "sufficient to

4

identify that he was talking about the September 11th, 1991 trust . . . certainly wasn't sufficient to be a specific reference [¶] . . . [¶] [t]o a power of appointment." Counsel for trustee remarked to the court, "I think that we all could see what he was trying to do, he just didn't do it correctly. And by law, there's no excuse for his non-compliance."

The Sonoma County Superior Court found the holographic will did not comply with the Family Trust's specific reference requirement, and so did not qualify as a valid exercise of the power of appointment pursuant to sections 630, 631, subdivision (b), and 632. The court instructed the trustee not to distribute decedent's shares of the Family Trust to the Salettas. The Salettas appealed.

In November 2018, the First District Court of Appeal affirmed the trial court's order, concluding decedent's will did not comply with section 632's requirements: "The Probate Code . . . does not allow for substantial compliance when a donor requires a powerholder [decedent] to specifically refer to the power of appointment as a condition of exercising the power."[2]

D.    *Underlying Petition to Amend Holographic Will*

On June 13, 2018, the Salettas filed their first amended petition in the Los Angeles County case to amend and reform decedent's holographic will "to clarify the intended testamentary directive" because decedent's "reference to giving his shares of the Norbert Theodore Eimers' Family Trust . . . necessarily refers to and incorporates the 'power of appointment' buried deep i[n] that

---

[2]     *Eimers v. Saletta* (Nov. 14, 2018, A148339 [nonpub. opn.].)

5

trust's 30 plus pages." The Salettas asked the court to reform the holographic will and add what they called a "technical phrase":

> "To Charles J. Saletta and Caryn Saletta I hereby leave my shares of the Norbert Theodore Eimers' Family Trust **under the power of appointment**. I also leave all my other property and any funds I have."

On October 30, 2018, trustee filed a demurrer to the first amended petition pursuant to Code of Civil Procedure section 430.10, subdivision (e). He alleged sections 631, subdivision (b) and 632 prohibited addition of the requested phrase. He asked the trial court to sustain the demurrer without leave to amend.

E.   *Trial Court's November 28, 2018 Ruling*

After argument on November 28, 2018, the trial court sustained trustee's demurrer to the Salettas' petition to amend the holographic will, without leave to amend.[3]

This appeal followed.

## DISCUSSION

On appeal, the Salettas contend it is proper to reform decedent's will to add the phrase "under the power of appointment" so as to clarify decedent's testamentary intent. We disagree.

---

[3]   The parties have proceeded without a reporter's transcript, and we do not know what was said on the record during the November 28, 2018 hearing. For our purposes, the lack of the reporter's transcript creates no issue, as we review de novo.

6

A.  *Standard of Review*

We review de novo a trial court's ruling on a demurrer. (*Dudek v. Dudek* (2019) 34 Cal.App.5th 154, 163 (*Dudek*).)  When reviewing an order sustaining a demurrer, we accept as true the material facts alleged in the complaint or petition, but not contentions, deductions, or conclusions of fact and law.  (*Ibid.*; *Estate of Holdaway* (2019) 40 Cal.App.5th 1049, 1052.)

B.  *Powers of Appointment*

As stated above, trustors often include powers of appointment in trust documents.  These powers allow a trustor to control to whom and how the trust property can be further devised after the trustor's death.  This appeal involves the interplay of three sections of the Probate Code, which address powers of appointment.

First, Section 630, subdivision (a), provides that if the creating instrument "specifies requirements as to the manner, time, and conditions of the exercise of a power of appointment, the power can be exercised only by complying with those requirements."  (§ 630, subd. (a).)

Section 632 goes further in discussing the significance of a specific condition included in some types powers of appointment: "If the *creating instrument expressly directs* that a power of appointment be exercised by an instrument that makes a *specific reference* to the power or to the instrument that created the power, *the power can be exercised only by an instrument containing the required reference*."  (§ 632, italics added.)

The Law Revision Commission comment on section 632 states:  "This section permits a donor to require an express reference to the power of appointment to ensure a conscious exercise by the donee.  In such a case, the specific reference to the

7

power is a condition to its exercise. This condition precludes the use of form wills with 'blanket' clauses exercising all powers of appointment owned by the testator. The use of blanket clauses may result in passing property without knowledge of the tax consequences and may cause appointment to unintended beneficiaries." (Relocation of Powers of Appointment Statute (Sept. 1991) 21 Cal. Law Revision Com. Rep. (1991) p. 109.)

The third section, section 631, addresses when a court can and cannot excuse compliance with the terms of a power of appointment. Subdivision (a) carves out an exception allowing the court to "excuse compliance with the formal requirements [specified in subdivision (a) of section 630] and determine that exercise of the appointment was effective" if two requirements are satisfied: (1) the appointment approximates the manner of appointment prescribed by the donor; and (2) the failure to satisfy the formal requirements does not defeat the accomplishment of a significant purpose of the donor. (§ 631, subd. (b).) However, subdivision (b), states "[t]his section does not permit a court to excuse compliance with a specific reference requirement under Section 632." Here, we see how the Probate Code expressly calls for different treatment of (1) powers of appointment, which must be exercised by a specific reference thereto, and (2) powers of appointment, which need not be referenced in a subsequent instrument.

C.    *Analysis*

A will may be reformed to conform to the testator's intent if clear and convincing evidence establishes that the will contains a mistake in the testator's expression of intent at the time the will was drafted and also establishes the testator's actual specific

8

intent at the time the will was drafted.  (*Estate of Duke* (2015) 61 Cal.4th 871, 879 (*Duke*).)

The Salettas contend the "intent of Timothy Eimers controls the legal effect and interpretation of his will" and that we should amend his holographic will "to acknowledge that Timothy Eimers' reference to giving his shares of the Norbert Theodore Eimers' Family Trust . . . necessarily refers to and incorporates the 'power of appointment' buried deep i[n] that trust['s] 30 plus pages."  They argue that a will should be construed according to the intention of the testator, and "not his imperfect attempt to express it," citing *Estate of Kime* (1983) 144 Cal.App.3d 246, 264.)  The Salettas contend *Duke* mandates reformation of this holographic will by adding the phrase "under the power of appointment" to effectuate decedent's clear intent to give his shares to them.  Relying on *Duke*, they argue "extrinsic evidence may support reformation of an instrument even where the instrument is unambiguous, if to do so will achieve the intent of the testator."

We conclude *Duke* is not relevant to the question before us. The issue is not whether decedent intended to give his trust shares to the Salettas.  The will is clear that he did.  And let's assume the evidence would show decedent intended to exercise the power of attorney but forgot to include that phrase in his will. Neither does that assumption rescue the Salettas.  The issue, aptly framed by respondent, is whether a trial court may amend or reform a will to excuse the testator's failure to comply with sections 631, subdivision (b) and 632, which expressly prohibit the court from validating gifts that require a specific reference to the power of appointment.  Reformation as urged by the Salettas eviscerates the statutes' requirement of a "specific" reference.

Creating a reference based on extrinsic evidence is nothing more than nullification of the statutory requirement of an express reference. Where, as here, discerning decedent's donative intent is not the issue, *Duke* does not apply. And it should go without saying that a donor's intent alone cannot trump the requirements of the law.

We have determined that the omission of a "specific reference" cannot be cured by amendment because to do so would undercut the express provisions of sections 630, 631, and 632.

Here, the creating trust instrument expressly empowers decedent to devise his trust shares in only one way: via an instrument that makes a specific reference to the power of appointment. Indeed, as set out above, the trust specifically invalidates gifts not made by a specific reference and in that event sets out those persons to whom the invalid gifts may be given. The "specific reference" condition places the Family Trust outside the exceptions carved out by section 631 and within the restriction set out by section 632, i.e., that the power of appointment "can be exercised only by an instrument containing the required reference." (§ 632.) Decedent's holographic will fails to satisfy this condition.

We acknowledge subsection (a) of section 631 provides the trial court with some flexibility in excusing defective exercises of certain powers of appointment. However, we conclude that by creating separate subsection (b), which expressly limits the exercise of powers of attorney requiring "specific reference," the Legislature intended noncompliance to be inexcusable. Reformation of decedent's will to add the phrase "under the power of appointment" is a remedy contrary to the Legislature's clear instruction to courts not to validate gifts given under

powers of appointment in wills which must include but lack "specific reference" to the power. The omission in the will cannot be cured by amendment, as the reformation the Salettas request is precluded by sections 630 through 632.

The Salettas argue decedent's reference to the Norbert Theodore Eimers Family Trust "necessarily" includes, in of itself, a reference to the power of appointment. We do not agree. We note section 632 actually distinguishes between a specific reference to the power of appointment itself and a specific reference to the instrument (in this case the Family Trust) that created the power. A creating instrument may require a reference to either or both. Section 632 states the power of appointment can be exercised "only by an instrument containing the required reference." We read section 632 to mean that if the trust requires a specific reference to the creating document, only a reference to the creating document suffices. If the trust requires a specific reference to the power of appointment itself, only a reference to the power of appointment suffices. One reference cannot be substituted for the other. Here, the Family Trust required a specific reference to the power of appointment itself. Thus, the will's reference to the Family Trust (the creating instrument) is not the same as a specific reference to the power of appointment and does not suffice. (*Estate of O'Connor* (2018) 26 Cal.App.5th 871, 884 (*O'Connor*) [the Legislature's use of the disjunctive "or" in section 632 indicates that specific reference to the power or to the instrument are independent means by which a donor can restrict a donee's exercise].)

11

The Salettas focus on the many similarities between the will here and the will in *O'Connor*. However, one discernable distinction stands out to us: the will in *O'Connor* expressly referred to the power of appointment, where the will here does not. In *O'Connor*, decedent's will provided: " 'I exercise any Power of Appointment which I may have over that portion of the trust or trusts established by my parents for my benefit or any other trusts for which I have Power of Appointment I exercise [*sic*] in favor of my brother . . . .' " (*O'Connor*, *supra*, 26 Cal.App.5th at p. 876.) Reliance on *O'Connor* is misplaced.

Finally, the Salettas argue trustee does not have standing "to demur or otherwise oppose/contest the probate of the estate of Timothy Eimers," including the petition to amend. They contend only individuals who are considered "interested persons" pursuant to section 48 have standing to demur to the petition to amend, and trustee does not fall within that category.

Section 48 defines an "interested person" to include: (1) an heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding; (2) any person having priority for appointment as personal representative; and (3) a fiduciary representing an interested person. The meaning of "interested person" as it relates to particular persons may vary from time to time and shall be determined according to the particular purposes of, and matter involved in, any proceeding. (§ 48, subd. (b); *Estate of Sobol* (2014) 225 Cal.App.4th 771, 782.)

Here, at the very least, the peculiar interrelated procedural posture of the probate estate vis-a-vis the trust compels us to conclude trustee has standing to file his demurrer. As the proceedings stand now, trustee has been ordered by the Sonoma County Superior Court not to distribute decedent's trust shares to the Salettas. That order has been affirmed by the First District Court of Appeal. Trustee is under a fiduciary duty to administer the Family Trust according to law. He must carry out the order of the Sonoma County Superior Court. Many of the arguments made by the Salettas were addressed and rejected by the Sonoma County Superior Court and the First District Court of Appeal, both of which adopted trustee's arguments. The only new argument here is whether reformation is allowed in light of sections 630 through 632. Under these circumstances, we find trustee qualifies as an "interested person" under section 48 with standing to weigh in on the probate proceedings.

Moreover, as trustee of the Norbert Eimers Family Trust, James Eimers is the only person under a duty to advocate for the trustor's wishes as specifically expressed in the language of the Family Trust. The Family Trust specifies that a power of appointment must be specifically referenced in order to effectuate any child's intended testamentary distribution. Trustee has a fiduciary duty to carry out the trustor's intent and to maintain the integrity of his trust. By appearing in the probate action, we conclude he is discharging his fiduciary obligations.

13

## DISPOSITION

The order sustaining the demurrer without leave to amend is affirmed.  Respondent James N. Eimers, as Trustee, is awarded costs on appeal.

**CERTIFIED FOR PUBLICATION**

STRATTON, J.

We concur:

BIGELOW, P. J.

GRIMES, J.

14