Filed 7/20/15

# IN THE SUPREME COURT OF CALIFORNIA

| | | |
|---|---|---|
| EVEN ZOHAR CONSTRUCTION & REMODELING, INC., | ) ) ) | |
| Plaintiff and Appellant, | ) ) | S210804 |
| v. | ) ) | Ct.App. 2/4 B239928 |
| BELLAIRE TOWNHOUSES, LLC, et al., | ) ) | Los Angeles County Super. Ct. No. BC458347 |
| Defendants and Respondents. | ) ) | |

Code of Civil Procedure[1] section 1008 imposes special requirements on renewed applications for orders a court has previously refused. A party filing a renewed application must, among other things, submit an affidavit showing what "new or different facts, circumstances, or law are claimed" (*id.*, subd. (b)) to justify the renewed application, and show diligence with a satisfactory explanation for not presenting the new or different information earlier (*California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 45–46, & fns. 14–15; see *Garcia v. Hejmadi* (1997) 58 Cal.App.4th 674, 688–690). Section 1008 by its terms "applies to all applications . . . for the renewal of a previous motion" and "specifies the court's jurisdiction with regard to [such] applications."[2] (§ 1008,

---

[1] All further statutory citations are to the Code of Civil Procedure, except as noted.

[2] In the present context, the terms "motion" and "application" are interchangeable. (See § 1003 ["An application for an order is a motion."].)

subd. (e).) This case raises the question whether section 1008 governs renewed applications under section 473, subdivision (b) (section 473(b)), for relief from default based on an attorney's "sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect" (*ibid.*). We conclude section 1008 does govern such applications. Because defendants concede their renewed application did not satisfy section 1008, we affirm the Court of Appeal's decision vacating the superior court's order granting relief from default.

## I. BACKGROUND

Plaintiff Even Zohar Construction & Remodeling, Inc., sued defendants Bellaire Townhouses, LLC, Samuel N. Fersht and the Fersht Family Living Trust for breach of contract and related claims arising out of a project to develop a condominium in North Hollywood. Defendants unsuccessfully petitioned to compel arbitration and then failed to file a responsive pleading to the complaint. Thereafter, the clerk entered defendants' default, and the court entered a default judgment in the amount of $1,701,116.70.

Defendants subsequently filed an application under section 473(b) for relief from default. Defendants titled their application one for "mandatory relief," thereby invoking the aspect of section 473(b) that requires a court to grant relief when the application is "accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, . . . unless the court finds that the default . . . was not in fact [so] caused . . . ." The same provision authorizes discretionary relief when "a judgment, dismissal, order, or other proceeding" is taken against a party or a party's legal representative "through his or her mistake, inadvertence, surprise, or excusable neglect." (*Ibid.*)

Accompanying the application was the affidavit of defendants' attorney, Daniel Gibalevich. In that sworn statement, Attorney Gibalevich attributed the default primarily to errors by his staff. He declared that, at the time defendants'

2

responsive pleading was due, he "had to spend substantial amounts of time away from the office" on personal matters. "I believed," he continued, "that I had sufficient staff to assure competent handling of client files. My associates were instructed to notify me immediately of issues that would require my personal attention. It appears that my staff failed to maintain this file in accordance with this firm's policies and procedures. [¶] Due to my frequent absences, I failed to file and serve the responsive pleading. . . . It is clear that my mistake and excusable neglect resulted in the entry of defaults and default judgments against the Defendants." Plaintiff opposed the motion with evidence that its attorney had repeatedly informed Gibalevich, by mail, e-mail and fax, of the impending default. Plaintiff also contended that Gibalevich and defendant Fersht had allowed the default to be taken as part of a practice of avoiding defendants' obligations to contractors by delaying payment and driving up legal fees and costs.

The superior court denied defendants' motion for relief from default, expressly finding Gibalevich's declaration "not credible." At the hearing on the motion, the court had criticized the declaration as "too vague and conclusory" and as "fuzz[ing] up the issue" of Gibalevich's own responsibility. The court repeated this criticism in its order, describing the declaration as "entirely too general" in light of plaintiff's showing, and as failing to show that "Gibalevich is solely at fault in not filing a timely responsive pleading." "Moreover," the court continued, "attorney Gibalevich tries to have it both ways" by speaking vaguely of his own fault while also claiming excusable neglect. "He has not demonstrated excusable neglect."

Thirty-three days later defendants filed a second "Notice of Motion for Mandatory Relief under [section] 473 to Vacate Defaults and Default [Judgments]." Accompanying the renewed motion was a second affidavit by Gibalevich, in which he offered a different explanation for his failure to file a

3

responsive pleading. That failure, he now asserted, had resulted from preoccupation with efforts to secure the return of other clients' files seized from his office as part of a criminal investigation. "[I]nvestigators with the Los Angeles District Attorney's Office," Gibalevich declared, had served a search warrant at his office as part of an "investigation focused on medical providers and not on me or my practice." "[O]ne of my associates, Mr. Savransky, resigned his position right after the search. That left me and Ms. Gina Akselrud as [the] only attorneys shouldering this heavy load." Gibalevich continued: "In my effort to secure the return of my client files, I engaged Mr. Shkolnikov, a criminal defense attorney. I volunteered to assist him in his research and drafting efforts." "I spent all of my time on efforts to return my client's files. I researched and wrote many drafts of the motions that were filed. This consumed me. I was working on this most of the day, every day. When I wasn't in front of the computer, I thought of nothing else. [¶] I began to obsess over my reputation and the disclosures that I had to make to Judges and opposing counsel alike." "I have to confess," Gibalevich concluded, "that this feeling of embarrassment is the reason why I failed to set out these facts in the declaration previously filed."

Gibalevich's associate attorney Akselrud submitted a declaration confirming the search, Gibalevich's and her own frequent absences from the office to make court appearances to continue hearings and trials, and Gibalevich's obsession with securing the return of his clients' files. Akselrud did not, however, confirm or mention Gibalevich's earlier sworn statement that his staff had failed to maintain the file in the instant case. Attorney Shkolnikov also submitted an affidavit stating that Gibalevich had devoted "all of his time and effort" to assisting Shkolnikov in recovering the seized files.

The superior court stayed execution of the default judgment to allow time to consider defendants' renewed motion for relief from default. In the hearing on

4

that motion, the court stated: "Mr. Gibalevich, you are presenting an entirely different story with this application than you have presented to the court originally." "You tried to blame it on a miscalendaring when the evidence is that your office received multiple, multiple notices before the defaults were entered in all different kinds of ways. [¶] And frankly, your story about being obsessed with this search warrant for the entire period of time is just not credible. You originally told the court you had to be out of the office for substantial periods of time. Now you say you're conducting all kinds of research on your computer in your office. [¶] You're not credible, Mr. Gibalevich." "You could have presented all of that with your original [affidavit]—these are not new facts." In response, Gibalevich argued that the facts supporting a renewed motion "don't have to be new facts. Under [section] 1008(b), they have to be different facts. They don't have to be new facts."[3]

Ruling on defendants' second application under section 473(b), the superior court once again rejected Gibalevich's explanations. "Attorney Gibalevich," the court observed, "first blamed the default and default judgment entered against defendants . . . on the lawyers he employed in his office." "When he lost the first motion," the court continued, "Gibalevich filed another motion. The second motion fails to comply with the requirements of section 1008(b). In this motion, attorney Gibalevich changed his story and blamed the default and default

---

**3** Defendants have abandoned this argument. As courts have explained, to permit a party to satisfy section 1008's requirement of showing "new or different facts" simply by offering "anything not previously 'presented' to the court" would have "[t]he miserable result . . . [of] defeat[ing] the Legislature's stated goal of reducing the number of reconsideration motions and would remove an important incentive for parties to efficiently marshall their evidence." (*Garcia v. Hejmadi*, *supra*, 58 Cal.App.4th at pp. 688–689; see *California Correctional Peace Officers Assn. v. Virga*, *supra*, 181 Cal.App.4th at p. 47, fn. 15 [same].)

judgment on his having become obsessed with the consequences of a search warrant executed on his office by the Los Angeles County District Attorney. (Neither the search warrant nor its consequences concerned the files of the defendants in this action.)" Moreover, "[t]he associate in Mr. Gibalevich's office did not support the claim in attorney Gibalevich's [first] declaration that she failed to maintain the [defendants'] file or notify Mr. Gibalevich of the entry of default and default judgment against [defendants]."

Even while concluding defendants had not satisfied the requirements of section 1008, the superior court nevertheless granted their renewed application for relief from default. The court explained that it felt "bound to follow" *Standard Microsystems Corp. v. Winbond Electronics Corp.* (2009) 179 Cal.App.4th 868 (*Standard Microsystems*), which the court understood as holding that section 473(b) takes precedence over section 1008, and that relief under section 473(b) based on an attorney's affidavit of fault is mandatory where no part of the fault is shown to be attributable to the attorney's clients. (Cf. *Standard Microsystems*, at pp. 894–904.) On this basis the court vacated the defaults and default judgment and directed the clerk to file defendants' answer to the complaint.

Plaintiff appealed, and the Court of Appeal reversed. The court declined to follow *Standard Microsystems*, *supra*, 179 Cal.App.4th 868, criticizing that decision as "undermin[ing] the Legislature's goal to limit repetitive motions and to provide 'an important incentive for parties to efficiently marshall their evidence' in the first instance." (Quoting *Garcia v. Hejmadi*, *supra*, 58 Cal.App.4th at p. 689.) "In this instance," the Court of Appeal observed, "Gibalevich's declaration failed to adequately explain why he had not included the facts about the search warrant execution and his response thereto in his first declaration. . . . Information about [those events] was obviously in Gibalevich's possession when he filed the first motion [for relief from default] and the relevance of the events (if

6

true) was patent. Gibalevich's only explanation for not having presented this information earlier was that he was embarrassed. The trial court did not find this explanation credible. That finding—a finding defendants do not contest—is binding upon us. [Citation.] Given the inadequacy of the defense showing, the trial court did not abuse its discretion in finding that defendants had failed to establish the predicates for relief under section 1008, subdivision (b)." "Based upon that finding," the Court of Appeal concluded, "the trial court should have denied defendants' renewal motion for lack of jurisdiction." Accordingly, the Court of Appeal reversed the superior court's order granting relief from default and directed the court to reinstate the defaults and the default judgment.

We granted defendants' petition for review.

## II. DISCUSSION

As noted, the Court of Appeal held defendants' failure to comply with section 1008 required the trial court to reject their renewed application for relief from default. The Court of Appeal was correct.

The question whether section 1008 governs applications under section 473(b) for relief from default is one of law. We answer such questions through de novo review. (*American Nurses Assn. v. Torlakson* (2013) 57 Cal.4th 570, 575.) Although defendants argued in the superior court that their renewed application satisfied section 1008, they have abandoned that position. Now defendants simply contend section 1008 does not apply, and for that reason they had "no obligation to present new or different facts, circumstances, [or] law, as section 1008(b) provides."

"Our fundamental task in construing" sections 473 and 1008, or any legislative enactment, "is to ascertain the intent of the lawmakers so as to effectuate the purpose of the statute." (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.) We begin as always with the statute's actual words, the "most reliable

7

indicator" of legislative intent, "assigning them their usual and ordinary meanings, and construing them in context. If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction. In cases of uncertain meaning, we may also consider the consequences of a particular interpretation, including its impact on public policy." (*Wells v. One2One Learning Foundation* (2006) 39 Cal.4th 1164, 1190.)

In this case, the parties disagree less over what sections 473 and 1008 mean than over how the two statutes interact. While plaintiff contends section 1008 governs all renewed applications for relief from default, including applications under section 473(b), defendants contend the two statutes conflict and that section 473(b) takes precedence. Under these circumstances, two principles of statutory construction are especially relevant. First, " '[a] court must, where reasonably possible, harmonize statutes, reconcile seeming inconsistences in them, and construe them to give force and effect to all of their provisions. . . .' " (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 805.) Second, all " ' " 'presumptions are against a repeal by implication' " ' " (*ibid.*), including partial repeals that occur when one statute implicitly limits another statute's scope of operation (*Schatz v. Allen Matkins Leck Gamble & Mallory LLP* (2009) 45 Cal.4th 557, 573). Thus, " ' "we will find an implied repeal 'only when there is no rational basis for harmonizing . . . two potentially conflicting statutes [citation], and the statutes are "irreconcilable, clearly repugnant, and so inconsistent that the two cannot have concurrent operation." ' " ' " (*Ibid.*) Applied to the case before us, these principles require us

8

to favor a reasonable construction that gives full effect to both sections 473(b) and 1008. With that cautionary preface we turn to the statutory language.

Section 473(b) contains two distinct provisions for relief from default. The first provision, presented here only for context, is discretionary and broad in scope: "The court may, upon any terms as may be just, relieve a party or his or her legal representative from a judgment, dismissal, order, or other proceeding taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect." (§ 473(b).) The second provision is mandatory, at least for purposes of section 473, and narrowly covers only default judgments and defaults that will result in the entry of judgments. This provision, the one here at issue, declares as follows: "Notwithstanding any other requirements of this section, the court shall, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any (1) resulting default entered by the clerk against his or her client, and which will result in entry of a default judgment, or (2) resulting default judgment or dismissal entered against his or her client, unless the court finds that the default or dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect." (§ 473(b).)

The general underlying purpose of section 473(b) is to promote the determination of actions on their merits. (See *Zamora v. Clayborn Contracting Group, Inc.* (2002) 28 Cal.4th 249, 255–256.) The additional, more specific purposes of section 473(b)'s provision for relief based on attorney fault is to "relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits." (*Metropolitan Service Corp. v. Casa de Palms, Ltd.* (1995) 31 Cal.App.4th 1481, 1487; see Assem. Com. on Judiciary, Analysis of

9

Sen. Bill No. 1975 (1987–1988 Reg. Sess.), as amended Aug. 1, 1988, p. 2.) To protect the opposing party, a court that grants relief based on an attorney's affidavit of fault must "direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties." (§ 473(b).) The court may also order the offending attorney to pay a penalty of no more than $1,000 and a similar amount to the State Bar of California's Client Security Fund. (§ 473, subd. (c)(1)(A), (B).)

Section 1008, which governs applications for reconsideration and renewed applications, appears in a chapter of the Code of Civil Procedure (pt. 2, tit. 14, ch. 4, §§ 1003–1008) setting out rules generally applicable to motions and orders. One of those rules, section 1008, subdivision (b), provides: "A party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown. For a failure to comply with this subdivision, any order made on a subsequent application may be revoked or set aside on ex parte motion." Courts have construed section 1008 to require a party filing an application for reconsideration or a renewed application to show diligence with a satisfactory explanation for not having presented the new or different information earlier. (*California Correctional Peace Officers Assn. v. Virga*, *supra*, 181 Cal.App.4th at pp. 46–47 & fns. 14–15; see *Garcia v. Hejmadi*, *supra*, 58 Cal.App.4th at pp. 688–690.)

Section 1008's purpose is " 'to conserve judicial resources by constraining litigants who would endlessly bring the same motions over and over, or move for reconsideration of every adverse order and then appeal the denial of the motion to

10

reconsider.' " (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1067 (2011–2012 Reg. Sess.), as amended Apr. 25, 2011, p. 4.) To state that purpose strongly, the Legislature made section 1008 expressly jurisdictional, as subdivision (e) explains: "This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. No application to reconsider any order or for the renewal of a previous motion may be considered by any judge or court unless made according to this section." (§ 1008, subd. (e).) To deter parties from filing noncompliant renewed applications, the Legislature provided that "[a] violation of this section may be punished as a contempt and with sanctions as allowed by Section 128.7." (§ 1008, subd. (d).)

We have recognized only one exception to section 1008's "jurisdiction[al]" (*id.*, subd. (e)) exclusivity. In *Le Francois v. Goel* (2005) 35 Cal.4th 1094, 1096–1097 (*Le Francois*), we held the statute "do[es] not limit a *court's* ability to reconsider its previous interim orders on its own motion," even while it "prohibit[s] a *party* from making renewed motions not based on new facts or law . . . ." We construed section 1008 in this manner to avoid serious doubts about its validity under the California Constitution's separation of powers clause. (Cal. Const., art. III, § 3.) " '[T]he Legislature,' " we explained, " 'generally may adopt reasonable regulations affecting a court's inherent powers or functions, so long as the legislation does not "defeat" or 'materially impair" a court's exercise of its constitutional power or the fulfillment of its constitutional function.' " (*Le Francois*, at p. 1103, quoting *Superior Court v. County of Mendocino* (1996) 13 Cal.4th 45, 58–59.) "One of the core judicial functions that the Legislature may regulate but not usurp is 'the essential power of the judiciary to resolve "specific

11

controversies" between parties.' " (*Le Francois*, at p. 1103, quoting *People v. Bunn* (2002) 27 Cal.4th 1, 15.) To limit a court's ability to correct its own rulings, we reasoned, " 'would directly and materially impair and defeat' " that " 'core power.' " (*Le Francois*, at p. 1104.)

We perceive no conflict between sections 473(b) and 1008. Section 1008 expressly applies to all renewed applications for orders the court has previously refused. Section 1008 by its terms "*specifies the court's jurisdiction* with regard to . . . renewals of previous motions, and applies to *all applications* . . . for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. *No application* . . . for the renewal of a previous motion may be considered by any judge or court unless made according to this section." (*Id.*, subd. (e), italics added.) In contrast, no language in section 473(b) purports to exempt applications for relief from default from the requirements of section 1008. In other words, section 1008 does not restrict initial applications for relief from default under section 473(b) in any way, nor does section 473(b) purport to authorize unlimited repetitions of the same motion. To interpret the two statutes in this way gives full effect to all provisions of both. Such an interpretation is strongly preferred, as we have explained. (See *ante*, at pp. 8-9; *Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles*, *supra*, 55 Cal.4th at p. 805.)

Defendants argue that sections 473(b) and 1008 do conflict because section 473(b), as they read it, literally permits repetitious and renewed motions for relief from default. This interpretation, defendants claim, follows from the Legislature's direction that the court "shall" grant relief from default "*whenever* an application for relief is made" in accordance with the statutory requirements. (§ 473(b), italics added.) Observing that "whenever" can mean " 'as often as' " (e.g., *Morse v. Custis* (1940) 38 Cal.App.2d 573, 576), defendants assert in their brief to this court that a motion under section 473(b) must be granted " '*whenever*' it is

12

made—initially or on renewal — as long as it is timely and in proper form and contains the requisite affidavit of fault" (italics added). While acknowledging their proposed interpretation would permit a defaulting party to file innumerable motions for relief during the six-month period after a default judgment is entered, defendants suggest the statute's threat of penalties and sanctions (§ 473, subd. (c)) will adequately deter abusively repetitious motions.

Defendants misread the statute. Read in the context of the full sentence in which it appears, the direction that the court shall grant relief "whenever an application for relief is made" (§ 473(b)) applies only "[n]otwithstanding any other requirements *of this section*" (*ibid*., italics added), that is, *notwithstanding the requirements of section 473*. Had the Legislature intended section 473(b) to mandate relief from default "notwithstanding section 1008" or "notwithstanding any other law," the Legislature knew well how to express that intention.[4] Just as importantly, the term "whenever" does not necessarily mean "as often as" or, as defendants would have it, "as many times as it takes, without limitation." Read in context, the term is more naturally understood to mean simply "when," and thus to indicate the necessary preconditions for judicial action (e.g., "the court must grant relief when the statutory conditions have been satisfied").

In summary, sections 473(b) and 1008 do not conflict. Nothing in the language or legislative history of those statutes suggests the Legislature has ever understood that motions for relief from default (§ 473(b)) are exempt from the requirements generally applicable to renewed motions (§ 1008).

---

[4]     The phrase "[n]otwithstanding any other law" occurs 12 times in the Code of Civil Procedure alone. (E.g., §§ 129, subd. (a), 354.45, subd. (b), 415.21, subd. (a), 581.5, 631.3, subd. (a), 1219, subds. (b), (c), 1279.5, subds. (b), (d), 1282.4, subd. (b), 1447, 1531.5, subd. (c)(1).)

To recognize that section 1008's requirements apply to renewed applications for relief from default based on an attorney's affidavit of fault does not significantly impair the policies underlying section 473(b). Those policies, as mentioned, are "to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits." (*Metropolitan Service Corp. v. Casa de Palms, Ltd.*, *supra*, 31 Cal.App.4th at p. 1487.) An attorney who candidly and fully acknowledges under oath the errors that have led a client into default will rarely have anything to add in a renewed motion. In the rare case in which "new or different facts, circumstances, or law" (§ 1008, subd. (b)) justifying a different outcome do come to light after a motion for relief has been denied, then that new information will support a renewed application that satisfies section 1008.

Because sections 473(b) and 1008 do not conflict, we need not apply the various tie-breaking rules of statutory construction that defendants claim favor the former statute over the latter. When no conflict between two statutes exists, it does not matter whether one is more specific and the other more general (see *Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal.4th 921, 942–943), or whether one was adopted earlier and the other later (*ibid*.; cf. *State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 956 [those canons of construction "do[] not authorize courts to rewrite statutes"]). For the same reason, to characterize section 473(b) as having a remedial purpose also does not justify giving it a nonliteral interpretation. The rule that a remedial statute is construed broadly does not permit a court to ignore the statute's plain language (see *Quarry v. Doe I* (2012) 53 Cal.4th 945, 988), especially on the flawed premise that broad construction is necessary to resolve a nonexistent conflict.

This is not to say that section 1008 could never conceivably conflict with another statute or that in the event of a conflict section 1008 would inevitably take

14

precedence. For example, the court in *In re Marriage of Hobdy* (2004) 123 Cal.App.4th 360 (*Hobdy*) interpreted section 1008 as conflicting with former section 2030 of the Family Code (added by Stats. 1993, ch. 219, § 106.1, pp. 1607–1608), which permitted a court to award attorney fees and costs during the pendency of proceedings for marital dissolution. While Code of Civil Procedure section 1008 required applications for reconsideration of orders to be brought within 10 days (*id.*, subd. (a)), the former Family Code provision allowed the court, "[f]rom time to time and before entry of judgment, [to] augment or modify the original award for attorney's fees and costs as may be reasonably necessary for the prosecution or defense of the proceeding or any proceeding related thereto" (Fam. Code, former § 2030, subd. (a)). As the *Hobdy* court concluded, "[t]he only reasonable interpretation of the 'from time to time' language is that application to augment or modify an attorney's fees award in a family law matter may be brought at any time, not just within 10 days of the original order." (*Hobdy*, at p. 367.) Section 1008, the court further held, also conflicted with the former Family Code provision in requiring that renewed applications and applications for reconsideration show "new or different facts, circumstances, or law" (Code Civ. Proc., § 1008, subd. (b)). The former Family Code provision, which contained no such requirement, permitted courts to award fees as they became "reasonably necessary" (*id.*, subd. (a)), even without a change in circumstances (*Hobdy*, at p. 367). Having identified these objective conflicts between the two statutes, the *Hobdy* court resolved them by giving former section 2030 of the Family Code precedence over section 1008 as the more specific statute. (*Hobdy*, at p. 369.) The *Hobdy* court's resolution of those conflicts does not inform the interaction between sections 473(b) and 1008, which do not conflict.

15

In three decisions, lower courts have expressed the view that motions for relief from default under section 473(b) need not comply with section 1008. None of these decisions offers a persuasive justification for its conclusion on that point.

The first decision is *Standard Microsystems*, *supra*, 179 Cal.App.4th 868, which the superior court below (see *ante*, at p. 6) understood as compelling it to grant defendants' motion for relief from default despite their failure to comply with section 1008. In *Standard Microsystems*, however, the Court of Appeal's statement that motions under section 473(b) need not comply with section 1008 was dictum or at most an alternative ground of decision. The court's only clear *holding* was that section 1008 did not apply to the defendant's application for *mandatory* relief under section 473(b) because the application did not seek reconsideration or renewal of the defendant's earlier, failed application for *discretionary* relief. (See *Standard Microsystems*, at pp. 889–893; cf. *id*. at p. 895 ["this is not a case where a party invokes the mandatory provisions of section 473(b) unsuccessfully, and then seeks to invoke them again"].) After announcing that holding, the court went on unnecessarily to suggest that, "[i]nsofar as . . . a conflict actually exists [between sections 473(b) and 1008], it must be resolved in favor of allowing relief under section 473(b), not denying it under section 1008." (*Standard Microsystems*, at p. 894.) The court proposed to resolve the posited conflict by giving preference to section 473(b) as more specific than section 1008, and also as remedial and thus entitled to broad interpretation. (*Standard Microsystems*, at pp. 894–895.) To apply these tie-breaking principles of statutory construction was unnecessary, as we have explained, because no conflict between section 473(b) and section 1008 exists.

The second decision holding that repeated applications for relief under section 473(b) need not comply with section 1008 is *Ron Burns Construction Co., Inc. v. Moore* (2010) 184 Cal.App.4th 1406 (*Ron Burns Construction*). In that

16

case, the Court of Appeal simply reiterated the reasoning of *Standard Microsystems*, *supra*, 179 Cal.App.4th 868, as an alternative basis for holding that section 1008 did not apply to an application for discretionary relief under section 473(b) from an order denying a motion for attorney fees. (*Ron Burns Construction*, at pp. 1418–1419, 1420.)

Third and finally, the court in *Wozniak v. Lucutz* (2002) 102 Cal.App.4th 1031 (*Wozniak*), held a party's failure to comply with section 1008 did not prevent a superior court from reconsidering an erroneous order granting a new trial—an order the court treated as a motion under section 473. (See *Wozniak*, at pp. 1038, 1043.) In reaching this conclusion, the *Wozniak* court relied in part on the understanding, which we later confirmed in *Le Francois*, *supra*, 35 Cal.4th 1094, 1103–1105, that section 1008 does not impair a court's inherent constitutional power to correct its own interim rulings. (*Wozniak*, at p. 1042; see *ante*, at p. 11.) The *Wozniak* court, however, also incorrectly stated that "it is irrelevant whether the court acts sua sponte or pursuant to a party's motion: 'We find this to be a distinction without a difference.' " (*Id.* at p. 1042.) We subsequently disapproved *Wozniak* to that extent in *Le Francois* (at p. 1107, fn. 5), explaining that the Legislature intended section 1008 to embody "a distinction *with* a difference. [¶] . . . [A] party may not file a written *motion* to reconsider that has procedural significance if it does not satisfy the requirements of section . . . 1008," and "[u]nless the requirements of section . . . 1008 are satisfied, any action to reconsider a prior interim order must formally begin with the court *on its own motion*." (*Le Francois*, at p. 1108.)

We disapprove *Standard Microsystems Corp. v. Winbond Electronics Corp.*, *supra*, 179 Cal.App.4th 868, *Ron Burns Construction Co., Inc. v. Moore*, *supra*,

184 Cal.App.4th 1406, and *Wozniak v. Lucutz, supra*, 102 Cal.App.4th 1031, to the extent those decisions are inconsistent with the views set out in this opinion.[5]

### III. DISPOSITION

The judgment of the Court of Appeal is affirmed.

**WERDEGAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**CUÉLLAR, J.**
**KRUGER, J.**

---

[5] Defendants have belatedly asked us to review the trial court's ruling denying their first application for relief from default. The validity of that ruling is not properly before us.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 215 Cal.App.4th 277
**Rehearing Granted**

_____

**Opinion No.** S210804
**Date Filed:** July 20, 2015

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Ralph M. Dau

_____

**Counsel:**

Daniel B. Harris; Crowell& Moring, Ethan P. Schulman and J. Daniel Sharp for Plaintiff and Appellant.

James S. Link; Reed Smith, Paul D. Fogel, Dennis Peter Maio; Gibalevich & Associates and Daniel Andrew Gibalevich for Defendants and Respondents.

1

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

J. Daniel Sharp
Crowell & Moring
275 Battery Street, 23rd Floor
San Francisco, CA  94111
(415) 986-2800

Paul D. Fogel
Reed Smith
101 Second Street, Suite 1800
San Francisco, CA  94105-3659
(415) 543-8700