Filed 5/4/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| LAURA FETTIG,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HILTON GARDEN INNS<br>MANAGEMENT LLC et al.,<br><br>    Defendants and Respondents. | B307348<br><br>Los Angeles County<br>Super. Ct. No. BC596162 |

    APPEAL from orders of the Superior Court of Los Angeles County, Armen Tamzarian, Judge.  Affirmed.

    Mortimer Law Firm, Thomas F. Mortimer, Jr.; Orland Law Group and James J. Orland for Plaintiff and Appellant.

    Harmeyer Law Group, Jeff G. Harmeyer and Timothy B. Pickett for Defendants and Respondents.

—————————————

"Duress by a third person" is the legal label for this contract case. Laura Fettig is trying to escape a settlement she put on the record. She claims her trial lawyer forced her to take the deal. But *duress by a third person* cannot void a contract when the other contracting party did not know about the duress and relied in good faith. Fettig settled with defendants who were unaware of the alleged duress. Fettig's accusation against her lawyer does not enable her to rescind a contract with others innocent of the charge. We affirm.

Fettig alleged a Hilton hotel shuttle bus hit her in 2014. She sued Hilton and the bus driver for a range of injuries. (We refer to the defendants as "Hilton.") Hilton, on the other hand, maintained its bus never hit Fettig; rather Fettig, angry the driver cut her off, thumped her fist on his bus and faked her maladies.

The case went to trial in February 2020. Fettig rested and, after a lunch recess, the trial lawyers announced a settlement: Hilton would pay $85,000 for Fettig's release.

On the record, the trial court asked Fettig if she agreed. Fettig equivocated. The trial court explained Fettig had to reach a definite decision about whether to accept the deal. The back-and-forth continued for 10 pages of transcript, including two recesses for Fettig to confer with her lawyer, Jared Gross.

After the second recess, Fettig said she did not need more time. The court asked if she was sure and said, "Would you like [to] wait overnight to think about it? Not a problem." Fettig replied, "No, I don't need overnight, your Honor." Fettig acquiesced in the $85,000 settlement. The court excused the jury.

Months later, lawyers other than Gross brought a motion to set aside the settlement. They asserted Gross failed to prepare Fettig's case for trial. The motion accused Gross of subjecting Fettig to duress to accept the settlement. Fettig declared, "Mr. Gross point blank threatened me at the counsel table by saying 'the defense will take your house for costs and I will not remain on the case any further.' Mr. Gross further told me that if I did not settle the case 'he would not be coming back to trial tomorrow.'"

Fettig's motion contended Gross's duress meant the court should rescind the settlement agreement under Civil Code section 1689, which authorizes rescission for duress, and under Code of Civil Procedure section 473, which provides for relief in cases of mistake, inadvertence, surprise, or excusable neglect.

The trial court denied Fettig's motion on June 25, 2020. It found that, when she had agreed to the settlement in open court, Fettig had been neither physically nor mentally incapacitated. The order explained: "During her conversation with the court, Fettig had a relatively calm and composed demeanor, though she clearly had mixed feelings about the settlement and was disappointed she was not receiving more money pursuant to the deal. At times, Fettig spoke with an American accent, in contrast to her accent while testifying in front of the jury. She made eye contact with the court and answered the court's questions coherently. Without hesitation she told the court she was 'capable' of entering into the settlement."

The court found no support for Fettig's claim that a brain injury impaired her capacity to agree. The court ruled Fettig had the capacity to settle her case.

3

The court held Fettig's allegations about Gross's duress did not support rescission. It cited the Restatement Second of Contracts, as well as *Chan v. Lund* (2010) 188 Cal.App.4th 1159, 1174 (*Chan*). "There is no evidence or even an allegation that [Hilton] or [its] counsel connived with Gross to place Fettig under duress or knew about Gross's alleged threats. . . . [G]iven the relatively weak evidence presented by Fettig on liability, causation, and damages, [Hilton's] offer was reasonable and certainly made in good faith. In the court's view, [Hilton's] offer was generous."

The court also rejected section 473 of the Code of Civil Procedure as a proper basis for relief. It stated it was making "no findings regarding Gross's alleged malpractice. If indeed Gross failed to meet the standard of care for a lawyer, Fettig's remedy is not setting aside the settlement."

Fettig then moved for reconsideration. On August 18, 2020, the court refused to reconsider, in part because Fettig offered no explanation for failing to include her new submissions with her original motion: none of her supposedly "new" facts actually were new. They were merely tardy.

Fettig filed a notice of appeal on August 21, 2020.

We independently review legal questions and defer to factual findings when substantial evidence supports them. (See *Chan*, *supra*, 188 Cal.App.4th at pp. 1166, 1168–1169.)

The court rightly refused to rescind the contract. It properly applied governing contract law, including the Restatement Second of Contracts.

With our emphasis, the Restatement Second of Contracts provides as follows:

4

"If a party's manifestation of assent is induced by one who is not a party to the transaction, the contract is voidable by the victim *unless the other party to the transaction in good faith and without reason to know of the duress either gives value or relies materially on the transaction.*" (Rest.2d Contracts, § 175.)

California follows this provision. (See *Chan*, *supra*, 188 Cal.App.4th at p. 1174, fn. 18.) Indeed, the Restatement based one of its pertinent illustrations on the California Supreme Court's decision in *Leeper v. Beltrami* (1959) 53 Cal.2d 195, 205–207. (Rest.2d Contracts, § 175, reporter's notes to com. e, illus. 11, p. 481.)

Fettig ignores the Restatement rule. So too does she refuse to grapple with the case the trial court cited as its chief precedent: *Chan*. By avoiding mention of *Chan*, Fettig effectively concedes its controlling force.

The trial court was right: Fettig had no grounds for rescinding a contract with parties that had not known about the supposed duress by third person Gross. Hilton materially relied on the settlement: midtrial, it surrendered the possibility of a defense verdict. Throughout the process, Hilton was blameless.

The trial court correctly rejected Fettig's reliance on section 473 of the Code of Civil Procedure. Fettig sought to use this provision as an end run around the Restatement rule. She cites no case favoring her effort to dress her argument about contractual duress in this camouflage. The trial court rightly refused to put the form of the argument over the substance of the carefully considered Restatement rule, which controls here.

Fettig argues the trial court should have used its "considerable and broad discretion in equity" to rescind her settlement agreement. We review one of the reasons this

5

argument fails:  the trial court did weigh the equities and found the $85,000 settlement was "generous" to Fettig.  The settlement *was* equitable.

The trial court based its conclusion about equity on first-hand familiarity with the matter.  The court found Fettig's trial theory was enough to get to the jury but was "wafer thin." "Fettig's case had serious problems with respect to liability, causation, and damages.  Even if Gross had subpoenaed additional witnesses, it is far from clear that Fettig would have achieved a better result than an $85,000 recovery had the case been tried to verdict. . . .  [A]n $85,000 settlement is not an inequitable result under the facts and circumstances of this case."

We defer to this evaluation, which was no abuse of discretion.  Weaknesses plagued Fettig's case.  The transcript reveals her account of the accident was unclear.  Hilton's cross-examination inflicted further damage.  Fettig had little lost income; she was on disability at the time.  She offered no medical bills.  Fettig claimed the incident caused her to suffer "foreign accent syndrome":  two months afterwards, she began speaking in a foreign accent.  Fettig said she had been born and raised in the U.S., but she spoke to the jury in some sort of European accent.  When the jury was not there, Fettig's accent changed.

The trial court's exercise of discretion was sound.

The court properly denied Fettig's motion for reconsideration.  Such a motion requires new facts, circumstances, or law that, despite reasonable diligence, could not have accompanied the original motion.  (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 839.)  Fettig did not show diligence.  She

6

offered a raft of factual material, none of which was recent. Fettig's tardy presentation abused the reconsideration process.

Fettig suggests the trial court was biased against her. She cites no legal authority to support her bias claim and has forfeited this issue. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

## DISPOSITION

We affirm the court's orders and award costs to the respondents.

WILEY, J.

We concur:

GRIMES, Acting P. J.

HARUTUNIAN, J.[*]

---

[*] Judge of the San Diego Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.