Filed 9/17/24  Extreme Transportation v. Salazar CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EXTREME TRANSPORTATION, INC., Plaintiff and Respondent, v. JONATHAN SALAZAR Defendant and Appellant. | D083027 (Super. Ct. No. 37-2019-00059072-CU-BC-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Ronald F. Frazier, Judge.  The appeal is construed as a petition for writ of mandate and denied; motion to dismiss is denied as moot.

Webb Law Group and Lenden F. Webb for Defendant and Appellant.

Landay Roberts, John K. Landay, and Waddy Stephenson for Plaintiff and Respondent.

In 2021, Jonathan Salazar successfully moved to set aside a default judgment entered against him and in favor of Extreme Transportation, Inc. (ETI) on the grounds that he was not properly served with the summons and

the complaint. ETI appealed that order, and this court reversed, concluding Salazar had been served effectively by substitute service at his usual mailing address. We directed the trial court to enter an order denying Salazar's motion and to re-enter the default judgment in favor of ETI.

Thereafter, Salazar renewed his motion to set aside the default judgment under Code of Civil Procedure section 1008, subdivision (b)[1], asserting new evidence established he was not properly served. The trial court denied the motion, and Salazar now appeals. In response, ETI moved to dismiss the appeal as taken from a nonappealable order. We agree with ETI that an order denying a renewed motion under section 1008, subdivision (b) is not appealable, but we exercise our discretion to treat Salazar's appeal as a petition for writ of mandate and deny the petition. Because Salazar did not show diligence and a reasonable explanation for failing to present the purported new evidence at the time of his initial motion to vacate the default judgment, the trial court properly denied Salazar's renewed motion.

FACTUAL AND PROCEDURAL BACKGROUND

The underlying facts of the dispute are set forth in our prior opinion in this case, *Perham v. Salazar* (Jan. 18, 2023, D079713) [nonpub. opn.] (*Perham*).[2] Therein, we explained that ETI filed its complaint against Salazar on November 6, 2019, alleging breach of the Independent Contractor Service Agreement the parties entered the prior year. (*Ibid.*) "Under the Agreement, Salazar provided ETI with freight transportation services. In the

---

[1] Subsequent undesignated statutory references are to the Code of Civil Procedure.

[2] James Perham is the chief executive officer of ETI and the assignee of the default judgment obtained by ETI. (*Perham, supra*, D079713.)

Agreement, Salazar listed his address as 14031 Woodland Drive, Fontana, California. ETI's complaint alleged that Salazar breached the Agreement by failing to reimburse ETI for fuel costs and by damaging property he was responsible for transporting. According to the complaint, Salazar stopped providing services to and responding to email messages from ETI on July 8, 2019." (*Ibid.*)

"On three consecutive days, a process server attempted to personally serve the summons and complaint on Salazar at the Woodland Drive address. "The following day, November 11, 2019, to effect substitute service under Code of Civil Procedure section 415.20, subdivision (b), the process server left a copy of the summons and complaint with Salazar's sister, Yese[n]ia Salazar, at the Woodland Drive address and mailed copies of the documents to the same address. In a declaration submitted in connection with ETI's opposition to Salazar's subsequent motion to set aside the default judgment, the process server stated that Yese[n]ia confirmed to him that Salazar resided at the address and that he also received mail there." (*Perham, supra*, D079713.)

"On January 8, 2020, ETI submitted a request for entry of default, which the court clerk entered that day. Default judgment was eventually entered by the court clerk on August 20, 2020 for $61,332.46. Over a year later, on September 13, 2021, a bank levy was executed on Salazar's personal bank account by the Los Angeles Sheriff." (*Perham, supra*, D079713.) In response to the bank levy, "Salazar filed a claim of exemption with the Los Angeles Sheriff. After receiving the claim of exemption, Perham responded by filing a motion in the trial court for an order to determine the claim. Salazar then filed an ex parte application to shorten time to file a motion to

3

stay execution of the judgment and to set aside the default judgment as void under section 473, subdivision (d)." (*Ibid*.)

"In his motion, Salazar asserted that service of the complaint was ineffective because he did not live at the Woodlands Drive address at the time of the substituted service. [¶] Perham opposed the application, arguing that a stay of enforcement was not appropriate because Salazar could not show a likelihood of prevailing since he was properly served with the summons and complaint. Perham pointed to Salazar's address on the Agreement and other evidence suggesting Salazar received mail at Woodland Drive." (*Perham, supra*, D079713.) In addition, at Perham's request, the trial court took "judicial notice of documents filed by Salazar with the California Secretary of State showing that Salazar formed and operated a business, Jonathan's Transportation Inc., from the Woodland Drive address around the time of the substituted service." (*Ibid*.)

"The trial court granted the ex parte application to shorten time and set a hearing and briefing schedule on Salazar's motion to set aside the default judgment." (*Perham, supra*, D079713.) On October 28, 2021, the trial court granted Salazar's motion and Perham appealed from the order setting aside the default judgment. (*Ibid*.) This court considered the appeal and overturned the trial court's order granting Salazar's motion. We rejected Salazar's claim that he had not been properly served by substitute service at the Woodland Drive address because Salazar presented no evidence to refute the evidence establishing the home was his usual mailing address. (*Ibid*.)

After the trial court regained jurisdiction in the case, Salazar filed a "Renewed Motion to Set Aside Judgment Pursuant to Cal. Code of Civ. Proc. § 473(d)." Therein, Salazar asserted that ETI had "obtained a bad faith default judgment" and that this court reversed the order granting relief from

that default because "the trial court record did not adequately address 'whether Woodland Drive was [Mr. Salazar's] usual mailing address.' " Further, Salazar asserted his motion sought "the same order" as the earlier motion to set aside the default judgment pursuant to section 473, subdivision (d), "but on new or different facts and circumstances, pursuant to" section 1008, subdivision (b).

Specifically, Salazar argued that additional testimony he obtained from Yesenia and his parents after the appeal corroborated his assertion that "the Woodland Drive address was not his usual place of mailing." Further, he asserted that he "updated his mailing address with [ETI] months before" the lawsuit was filed. In support of this assertion, Salazar's counsel, Christopher E. Nichols, submitted an email from Salazar to ETI's counsel, dated August 2, 2019, stating that Salazar "found this email in my junk mail and recently received the letters from a[n] address I do not reside at any more," and providing ETI with his new address in Eastvale, California.[3] The email shows it was forwarded from Salazar to Nichols on September 15, 2021. In his declaration, Nichols explained that he did not submit the email in support of Salazar's initial motion to vacate the default judgment because the forwarded message was intercepted by a spam filter. Salazar asserted this new evidence showed the Woodland Drive address was not a proper place for personal service and, thus, ETI's substitute service was not effective.

ETI opposed the renewed motion, contending that the trial court lacked authority to reconsider the issue and that Salazar had failed to satisfy the requirements of section 1008. ETI also asserted Salazar was collaterally estopped from asserting the Woodland Drive address was not his usual

---

[3] No email from ETI is included in the portion submitted to the trial court.

mailing address. Salazar filed a reply brief, and after a hearing on the motion, the trial court denied Salazar's renewed motion to set aside the judgment. Salazar filed a notice of appeal from that order.

DISCUSSION

I

*Appealability*

As stated, ETI filed a motion to dismiss Salazar's appeal as taken from an unappealable order. Salazar opposed the motion and we deferred the issue to this panel. In support of its motion, ETI cites to several appellate court decisions concluding that an order denying a renewed motion under section 1008, subdivision (b) is not an appealable order: *Tate v Wilburn* (2010) 184 Cal.App.4th 150 (*Tate*), *Chango Coffee, Inc. v. Applied Underwriters, Inc.* (2017) 11 Cal.App.5th 1247 (*Chango*), and *Global Protein Products, Inc. v. Le* (2019) 42 Cal.App.5th 352 (*Global Protein*). In response, Salazar concedes "that '[r]enewed motions are *generally* not appealable,' " but argues there is an exception to the rule for postjudgment orders like this one and that the policy behind the rule does not apply here. Alternatively, Salazar asks this court to treat his appeal as a petition for writ of mandate.

A

Section 1008 controls applications for reconsideration of court orders (§ 1008, subd. (a)) and renewals of previous motions (*id.*, subd. (b)). "Section 1008, subdivision (a) states the procedure for seeking reconsideration of a previous order. Section 1008, subdivision (b) sets out similar prerequisites for filing a renewed motion for an order that has previously been denied." (*Kerns v. CSE Ins. Group* (2003) 106 Cal.App.4th 368, 381 (*Kerns*).) Section 1008, subdivision (b) states: "A party who originally made an application for an order which was refused in whole or part, or granted conditionally or on

6

terms, may make a subsequent application for the same order upon new or different facts, circumstances, or law, in which case it shall be shown by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown. For a failure to comply with this subdivision, any order made on a subsequent application may be revoked or set aside on ex parte motion."

Section 1008, subdivision (g) specifies that "[a]n order denying a motion for reconsideration made pursuant to subdivision (a) is not separately appealable. However, if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order." The statute is silent with respect to the appealability of an order denying a renewed motion brought under section 1008, subdivision (b).

In *Tate, supra*, 184 Cal.App.4th 150, this court held that "an order denying a renewed motion pursuant to section 1008, subdivision (b) is not appealable." (*Id.* at p. 152.) In *Tate*, we noted that no case had yet addressed whether an order denying a renewed motion is appealable, but looked to the "extensive body of case law concerning the appealability of an order denying a motion for reconsideration under section 1008, subdivision (a)." (*Id.* at p. 159.) We explained that, "[a]s indicated by the text of section 1008, motions for reconsideration under section 1008, subdivision (a), and renewed motions under section 1008, subdivision (b) are closely related. (See *Kerns*[, *supra,*] 106 Cal.App.4th [] at p. 381 ['Although the two subdivisions differ in certain minor details, each sets out the same essential requirements.'].) A party filing either a motion under section 1008, subdivision (a) or (b) is

7

seeking a new result in the trial court based upon 'new or different facts, circumstances, or law.' (§ 1008, subds. (a), (b).)"[4] (*Tate,* at pp. 159–160.)

*Tate* noted there was, at that time, a split of authority with respect to whether an order denying reconsideration is appealable, but that this court had concluded such orders are not appealable. *Tate* held the rationale supporting this conclusion—" 'to eliminate the possibilities that (1) a nonappealable order or judgment would be made appealable, (2) a party would have two appeals from the same decision, and (3) a party would obtain an unwarranted extension of time to appeal' "—"appl[ied] with equal force to an order denying a renewed motion pursuant to section 1008, subdivision (b)." (*Tate, supra*, 184 Cal.App.4th at pp. 158–160.) *Tate* also noted that "the possibility that a party may obtain an unwarranted extension of time to appeal is actually more of a concern with respect to a renewed motion under section 1008, subdivision (b), in light of the fact that such a motion may be brought at any time, while a motion for reconsideration must be brought 'within 10 days after service upon the party of written notice of entry of the [underlying] order.' " (*Id*. at p. 160, citing § 1008, subd. (a).)

After *Tate* was issued, in 2011, section 1008 was amended to add subdivision (g). That provision, as noted, "permits a party to include an appeal from a motion for reconsideration with an existing appeal from the

---

4    Section 1008, subdivision (a) states: "When an application for an order has been made to a judge, or to a court, and refused in whole or in part, or granted, or granted conditionally, or on terms, any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order. The party making the application shall state by affidavit what application was made before, when and to what judge, what order or decisions were made, and what new or different facts, circumstances, or law are claimed to be shown."

trial court's original ruling." (*Chango, supra*, 11 Cal.App.5th at p. 1253.) *Chango* considered and rejected the appellant's argument that because the amendment did not "provide that an order denying a renewed motion made pursuant to section 1008, subdivision (b) is not separately appealable," the amendment "effectively abrogated *Tate*." (*Id*. at p. 1253.)

Instead, *Chango* held that orders denying a renewed motion under section 1008, subdivision (b) are not appealable, explaining that the "usual legislative intent analysis suggest[ed] the opposite presumption concerning the amendment [advanced by the appellant]. 'The Legislature is presumed to have knowledge of existing judicial decisions when it enacts and amends legislation. When the Legislature amends a statute that has been the subject of judicial construction, changing it only in part, the presumption is that the Legislature intended to leave the law unchanged in the aspects not amended.' " (*Chango, supra*, 11 Cal.App.5th at p. 1253.) The court concluded, "the Legislature's decision not to address the appealability of orders denying renewed motions under section 1008, subdivision (b) suggests the Legislature intended the *Tate* court's construction to control." (*Ibid*.)

Further, *Chango* stated that, "as the Senate Judiciary Committee observed in its analysis of the amending legislation, 'Section 1008's purpose is " 'to conserve judicial resources by constraining litigants who would endlessly bring the same motions over and over, or move for reconsideration of every adverse order and then appeal the denial of the motion to reconsider." ' (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1067 (2011–2012 Reg. Sess.) as amended Apr. 25, 2011, p. 4.)' " (*Chango, supra*, 11 Cal.App.5th at p. 1253; see also *Global Protein, supra*, 42 Cal.App.5th at p. 364 [following *Chango* and holding denial of renewed motion under section 1008, subdivision (b) is

9

not appealable]; and *Westmoreland v. Kindercare Education LLC* (2023) 90 Cal.App.5th 967, 974 [same].)

B

We agree with the decisions that have considered this issue and concluded that an order denying a renewed motion under section 1008, subdivision (b) is not appealable. As an initial matter, we are not persuaded by Salazar's argument that because the order was entered after judgment, it is appealable under section 904.1, subdivision (a)(2). That provision creates appellate jurisdiction for postjudgment orders. However, "not every postjudgment order that follows a final appealable judgment is appealable." (*Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 651.) Salazar's bare citation to the statute does not persuade us that *Tate*, which itself concerned a postjudgment order, and the cases following it, were wrongly decided. (See *Rojes v. Riverside General Hospital* (1988) 203 Cal.App.3d 1151, 1161, overruled on other grounds by *Passavanti v. Williams* (1990) 225 Cal.App.3d 1602, 1605 [rejecting argument that order denying motion for reconsideration is appealable under section 904.1, subd. (a)(2), and holding that "[t]he same policy reasons for determining that denials of motions to vacate judgments and motions for new trial are not appealable are applicable to denials of motions for reconsideration: namely, to eliminate the possibilities that (1) a nonappealable order or judgment would be made appealable, (2) a party would have two appeals from the same decision, and (3) a party would obtain an unwarranted extension of time to appeal"].)

Salazar's argument that the policies underlying the rule precluding appeal of orders denying renewed motions is also not well-taken. Salazar asserts his "appeal does not give him a second bite at the apple" because it is his first appeal since he originally prevailed on his motion to vacate the

10

default judgment. While it is true Salazar could not appeal as the prevailing party, the policies remain relevant because the same underlying issues were already adjudicated by this court. Regardless of which party challenged the trial court's decision, the case was previously decided by the Court of Appeal. Accordingly, we agree with ETI that dismissal of the appeal is appropriate.

Dismissal, however, does not end our inquiry. Salazar argues that even if we lack jurisdiction to consider the appeal, we may exercise our discretion to treat the appeal as a petition for writ of mandate. We agree such treatment is appropriate in this circumstance.

In *Olson v. Cory* (1983) 35 Cal.3d 390, the Supreme Court "determined that it was appropriate to treat an appeal as a petition for a writ of mandate when there was no adequate remedy at law, 'the issue of appealability was far from clear in advance,' the records and briefs included the necessary elements for a petition for a writ of mandate, there was nothing to indicate that the trial court would appear separately or become more than a nominal party, and dismissing the appeal rather than exercising the court's discretion to reach the merits would be ' " 'unnecessarily dilatory and circuitous.' " ' " (*Global Protein, supra*, 42 Cal.App.5th at p. 365.)

While not all of the elements articulated in *Olson* are present, this case presents an unusual procedural situation because Salazar has no other ability to challenge the trial court's ruling. Additionally, the merits of the issues raised by Salazar have been fully briefed by the parties and there is no indication that the trial court would appear separately or become more than a nominal party. As a result, we exercise our discretion and treat the appeal as a petition for a writ of mandate.

II

11

On the merits, Salazar argues the court acted arbitrarily by failing to consider the additional evidence he submitted in support of the renewed motion, and instead based its decision on this court's prior opinion. Salazar also asserts the judgment is void because the evidence he submitted established the Woodland Drive address was not his usual mailing address, and thus the trial court's decision denying his renewed motion was not supported by the evidence. Neither argument warrants reversal of the trial court's order.

A

"Section 1008, which governs applications for reconsideration and renewed applications, appears in a chapter of the Code of Civil Procedure (pt. 2, tit.14, ch. 4, §§ 1003–1008) setting out rules generally applicable to motions and orders." (*Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 839 (*Even Zohar*).) The law's purpose "is ' "to conserve judicial resources by constraining litigants who would endlessly bring the same motions over and over, or move for reconsideration of every adverse order and then appeal the denial of the motion to reconsider." ' (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 1067 (2011–2012 Reg. Sess.), as amended Apr. 25, 2011, p. 4.) To state that purpose strongly, the Legislature made section 1008 expressly jurisdictional, as subdivision (e) explains: 'This section specifies the court's jurisdiction with regard to applications for reconsideration of its orders and renewals of previous motions, and applies to all applications to reconsider any order of a judge or court, or for the renewal of a previous motion, whether the order deciding the previous matter or motion is interim or final. ...' (§ 1008, subd. (e).) To deter parties from filing noncompliant renewed applications, the Legislature provided that '[a] violation of this may be

12

punished as a contempt and with sanctions as allowed by Section 128.7.' (§ 1008, subd. (d).)" (*Even Zohar, supra*, 61 Cal.4th at pp. 839–840.)

As discussed, the provision at issue here, section 1008, subdivision (b), allows "[a] party who originally made an application for an order which was refused in whole or part, or granted conditionally or on terms" to "make a subsequent application for the same order *upon new or different facts, circumstances, or law ....*" Critically, section 1008 "require[s] a party filing ... a renewed application to show diligence with a satisfactory explanation for not having presented the new or different information earlier." (*Even Zohar, supra*, 61 Cal.4th at p. 839; see also *California Correctional Peace Officers Assn. v. Virga* (2010) 181 Cal.App.4th 30, 46 [" 'Without a diligence requirement the number of times a court could be required to reconsider its prior orders would be limited only by the ability of counsel to belatedly conjure up a legal theory different from those previously rejected, which is not much of a limitation.' "].)

## B

Salazar asserts the trial court's question to his counsel—"why do I want to consider a renewed motion to set aside the default when the Fourth District already said, 'Hey, [trial court], you got it wrong the first time?' "—shows the court failed to consider his motion and instead relied solely on our prior decision.[5] We disagree. The trial court's question was posed at the start of the hearing. Salazar's counsel responded by explaining that he was not asking the court to reject this court's directions, but his argument was instead based on new evidence unavailable at the time of his earlier motion, i.e. the declarations of Salazar's sister and father and the email he sent to

---

[5] The court reiterated the point after this statement, explaining, "I mean, do I really want to say, 'Hey, in your face, Fourth District, I want to set it aside anyway?' "

13

ETI's counsel before the default judgment providing his new address, that subtly changed the facts at issue during the first motion proceeding.

In response to Salazar's argument, the court asked why the supposed new evidence wasn't supplied before. Salazar's counsel then pointed to *Film Packages, Inc. v. Brandywine Film Productions, Ltd.* (1987) 193 Cal.App.3d 824 (*Film Packages*), which he argued permitted the court to consider the new information that was "subtle nuance" on the evidence previously considered in this case. ETI's counsel then argued the court lacked jurisdiction to consider the renewed motion because it did not supply any new evidence that with reasonable diligence could have been provided the first time the court considered the motion. After hearing both arguments, the court took the matter under submission. The court issued a minute order later that day, denying the motion without any elaboration of its decision.

"The most fundamental principle of appellate review is that ' "A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it ... and error must be affirmatively shown." ' " (*Universal Home Improvement, Inc. v. Robertson* (2020) 51 Cal.App.5th 116, 125.) We "resolve all factual conflicts and questions of credibility" in the prevailing party's favor. (*Schild v. Rubin* (1991) 232 Cal.App.3d 755, 762.) Any "ambiguities are resolved in favor of affirmance." (*Winograd v. American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631.) And we will affirm the judgment if it is correct on any theory, regardless of the trial court's reasoning. (*Estate of Beard* (1999) 71 Cal.App.4th 753, 776–777.)

In light of these principles we do not agree with Salazar's characterization of the trial court's statements at the hearing. The trial court made clear it was hesitant to reject this court's decision by again vacating the

14

default, but nothing in the record establishes that was its rationale for denying the motion. Instead, the record before this court shows the trial court considered the renewed motion and the arguments of counsel before issuing its denial order. Put simply, we do not agree with Salazar the trial court failed to consider his motion.

With respect to the new evidence Salazar provided with his renewed motion—the declarations of Salazar's sister and father, and the email correspondence from Salazar to ETI in August 2019 that was forwarded to his counsel in September 2021—we do not agree this evidence showed as a matter of law the default judgment was void. The trial court implicitly found Salazar failed to show "diligence with a satisfactory explanation for not having presented the new or different information earlier" and this finding was amply supported by the record. (*Even Zohar, supra*, 61 Cal.4th at p. 839.)

Salazar's only explanation for why he did not provide the declarations of his sister and father at the time he filed his first motion to vacate the default was that he was prevented by time constraints. However, as ETI points out, Salazar retained counsel on September 15, 2021, and the hearing took place approximately six weeks later. Certainly, this was sufficient time to obtain the short declarations from Salazar's family members he submitted with the renewed motion.[6] Additionally, the declarations provided by Salazar's sister and father present only conflicting evidence about Salazar's residency and mailing address. Yesenia stated only that "I did not tell the

---

[6] Further, the brevity in the amount of time Salazar had to marshal his evidence was a result of his own decision to seek shortened time. If Salazar "needed more time to develop his record…, he should not have filed the motion when he did." (*Reese v. Wal-Mart Stores, Inc.* (1999) 73 Cal.App.4th 1225, 1242.)

15

process server that [Salazar] lived at the Woodland Drive address. I told the process server that I was related to [Salazar] and that I saw him every once in a while." These statements do not refute a finding that Woodland Drive was Salazar's usual mailing address.

Likewise, Salazar's father's statements that the Woodland Drive home was owned by him and his wife, that it was not Salazar's usual mailing address after February 2019, and that he did not receive any mail there after that date, are undermined by the evidence presented at the prior hearing showing that Salazar himself identified the address as his mailing address in documents filed with the California Secretary of State after that time. Salazar's father's declaration does not negate the existence of the evidence supporting this court's conclusion that the Woodland Drive address was his usual mailing address at the time of the substitute service.

Salazar's assertion that he provided his counsel with an email he sent to ETI in August 2019 providing his new address also does not overcome the court's implied finding that he was not diligent in presenting this evidence at the time of his initial motion to vacate the default judgment. As ETI points out, Salazar himself was in possession of this information. Presumably, Salazar's counsel would have reviewed Salazar's declaration with him before submitting it and Salazar would have recognized the omission of this important fact. Salazar's failure to supply this information to support his initial motion was not reasonably diligent. In light of these facts, we

conclude the trial court's denial of Salazar's renewed motion was sufficiently supported by the evidence and was not an abuse of discretion.[7]

## DISPOSITION

ETI's motion to dismiss is denied as moot and the constructive petition for writ of mandate is denied. ETI is awarded costs.

McCONNELL, P. J.

WE CONCUR:

DO, J.

BUCHANAN, J.

---

[7] Salazar relies on *Film Packages, supra*, 193 Cal.App.3d 824 to support his argument that the court erred by rejecting his renewed motion. This reliance is misplaced. In *Film Packages*, the plaintiff brought three successive attachment motions. (*Id*. at p. 826.) The first two were not successful. (*Ibid*.) The third, which was brought pursuant to section 1008, subdivision (b), and based on deposition testimony taken after the prior denials, was granted. (*Id*. at p. 827.) On appeal, the respondent asserted that the deposition testimony did not reveal any new facts to support the renewed motion. The Court of Appeal rejected that argument, concluding "while new facts, in the sense of substantive occurrences which were not previously known, were not shown, new evidence of the meaning of those facts was produced, stemming from depositions of the operative players." (*Id*. at p. 829.) The court affirmed the trial court's order granting the renewed motion based on this evidence.

Unlike *Film Packages*, the trial court here *denied* the renewed motion. As we have explained, this denial was implicitly based on Salazar's failure to provide any new evidence that could not have been produced earlier with reasonable diligence. As in *Film Packages*, the trial court's finding was supported by the record and we are, therefore, bound to uphold it.

17