Filed 7/3/25  P. v. Silva CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B337341 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. NA103759) |
| v. | |
| LEONEL SILVA, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Judith L. Meyer, Judge.  Affirmed.

Martin Velez, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Wyatt E. Bloomfield, Supervising Deputy Attorney General, and William H. Shin, Deputy Attorney General, for Plaintiff and Respondent.

————————

In 2016 Leonel Silva pleaded guilty to seven counts of home invasion robbery and related counts, and the trial court sentenced him to 16 years in state prison, including a one-year prior prison term enhancement pursuant to Penal Code section 667.5, former subdivision (b).[1] In 2024 the court recalled Silva's sentence under section 1172.75, dismissed the prior prison term enhancement, and resentenced him to the same sentence less one year, resulting in a 15-year sentence.

On appeal, Silva contends the trial court erred in reimposing the upper term of nine years on the principal robbery count because there was no finding by a jury beyond a reasonable doubt of aggravating circumstances (or stipulation by Silva) as required under section 1170, subdivision (b)(2) (section 1170(b)(2)). Silva argues the section 1170(b)(2) restriction applied because under section 1172.75, subdivision (d)(2), a trial court at resentencing must apply "any other changes in the law that reduce sentences."

We agree with the majority of the Courts of Appeal, which have held section 1172.75, subdivision (d)(4) (1172.75(d)(4)) creates an exception to the heightened factfinding requirements for upper term sentences in a section 1172.75 resentencing proceeding where the trial court originally sentenced the defendant to the upper term. (See *People v. Mathis* (2025) 111 Cal.App.5th 359 (*Mathis*); *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455 (*Brannon-Thompson*); contra, *People v. Gonzalez* (2024) 107 Cal.App.5th 312 (*Gonzalez*).)

Silva also contends section 1172.75(d)(4), if interpreted to create an exception from the requirement for proof of aggravating

---

[1] Further statutory references are to the Penal Code.

circumstances, violates his federal and state constitutional rights to equal protection by providing greater sentencing relief to new offenders than to prior offenders being resentenced under section 1172.75.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Robbery, Plea, and Sentencing*

According to the probation report, on August 11, 2015 at approximately 5:50 a.m., seven members of the Aceves family were asleep at home when Silva and several other men forced their way into the home.  The intruders forced many of the family members at gunpoint to lie on the floor, and the intruders bound the victims' hands behind their backs with plastic zip ties.  One victim was struck on the back of the head with the rifle, and another victim had the barrel of the rifle placed in his mouth.  The intruders ransacked the two-story home before stealing one of the victims' vehicles and fleeing.  Law enforcement recovered an assault rifle and a handgun from Silva's home.

On May 5, 2016 Silva pleaded guilty to seven counts of home invasion robbery (§ 211; counts 1-7); two counts of assault with a firearm (§ 245, subd. (a)(2); counts 8 & 9); and possession of a firearm by a felon (§ 29800, subd. (a)(1); count 10).  Silva admitted he had served one prior prison term within the meaning of former section 667.5, subdivision (b).

On August 30, 2016 the trial court sentenced Silva to an aggregate term of 16 years in state prison, comprising the upper term of nine years on count 1 for robbery plus one year for his prison prior; consecutive terms of two years (one-third of the

3

middle term of six years) on counts 2, 3, and 4 for robbery; and concurrent lower terms on counts five through 10.

B.    *The Petition for Resentencing*

On February 5, 2024 Silva's attorney filed a petition for recall and resentencing pursuant to section 1172.75.[2]  Silva requested the trial court strike the one-year prior prison term enhancement and provide a full resentencing hearing at which the court would apply all new ameliorative statutes, including sections 1170(b)(2) and 1385.

At the February 5, 2024 resentencing hearing, Silva argued that under current law, the trial court could only impose the upper term if a jury has found aggravating circumstances true, absent a stipulation by the defendant.  The prosecutor argued section 1172.75(d)(4) provided an exception from the aggravated-circumstance requirement where the upper term was initially imposed.  The prosecutor further argued that even if proof of aggravating circumstances was necessary, Silva's record of conviction showed he suffered a prior conviction.

After reviewing the record, the trial court ruled, "Absolutely everything will be the same on that plea except the court will strike the one-year prior, the [section 667.5, former subdivision (b)] prior, and keep high term on count 1.  [Silva] pled

---

[2]    It appears that in December 2022 Silva's case was assigned to the trial court following identification of Silva as eligible for recall of sentence under section 1172.75.  The record does not contain a notice from the California Department of Corrections and Rehabilitation identifying Silva as eligible for resentencing, but a minute order states the matter was assigned to the court for resentencing on December 13, 2022.

to a prior so the court is taking his criminal record as a factor in aggravation and keeping the one-year prior." The court sentenced Silva to 15 years in state prison.

Silva timely appealed.

## DISCUSSION

A. *Section 1172.75 and Standard of Review*

"'Prior to January 1, 2020, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant had served a separate prior prison term and had not remained free of custody for at least five years. [Citation.] Effective January 1, 2020, Senate Bill No. 136 (2019-2020 Reg. Sess.) (Stats. 2019, ch. 590) . . . amended section 667.5 by limiting the prior prison term enhancement to only prior terms for sexually violent offenses. [Citations.] Enhancements based on prior prison terms served for other offenses became legally invalid.'" (*People v. Garcia* (2024) 101 Cal.App.5th 848, 854 (*Garcia*); accord, *People v. Burgess* (2022) 86 Cal.App.5th 375, 379-380.)

The Legislature later enacted Senate Bill No. 483 (2021-2022 Reg. Sess.), effective January 1, 2022, to make the changes implemented by Senate Bill No. 136 retroactive by adding former section 1171.1 (now section 1172.75). (See Stats. 2021, ch. 728, § 1 ["it is the intent of the Legislature to retroactively apply . . . Senate Bill 136 . . . to all persons currently serving a term of incarceration in jail or prison for these repealed sentence enhancements"]; *Garcia, supra*, 101 Cal.App.5th at pp. 854-855.)

Section 1172.75, subdivision (a), provides, "Any sentence enhancement that was imposed prior to January 1, 2020,

5

pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." The Department of Corrections and Rehabilitation is required to identify for the sentencing courts all persons "currently serving a term for a judgment that includes an enhancement described in subdivision (a)." (§ 1172.75, subd. (b).) Further, if a sentencing court verifies a defendant was sentenced under an invalid enhancement, the court "shall recall the sentence and resentence the defendant." (*Id.*, subd. (c).)

"'By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly "invalid" enhancements.'" (*Garcia, supra*, 101 Cal.App.5th at p. 855; accord, *People v. Grajeda* (June 3, 2025, No. B337664) __ Cal.App.5th __ [2025 Cal. App. LEXIS 352, at p. *7].) Section 1172.75, subdivision (d)(1), states the resentencing "shall result in a lesser sentence than the one originally imposed as a result of the elimination of the repealed enhancement, unless the court finds by clear and convincing evidence that imposing a lesser sentence would endanger public safety," and further, resentencing "shall not result in a longer sentence than the one originally imposed."

This case involves the impact on resentencing of two subdivisions of section 1172.75. Subdivision (d)(2) generally provides that the sentencing court "shall apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." (§ 1172.75, subd. (d)(2).) But subdivision (d)(4) provides as to upper term sentences that "[u]nless the court

6

originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."[3]

We review a trial court's sentencing determinations in a section 1172.75 resentencing proceeding for an abuse of discretion. (*Mathis, supra*, 111 Cal.App.5th at p. 366; see *Garcia, supra*, 101 Cal.App.5th at pp. 855-856 [reviewing determination under § 1172.75, subd. (d), that a sentence reduction would endanger public safety for abuse of discretion].) However, where the appeal from a resentencing order "raises a question of law, our review is de novo." (*Mathis*, at p. 366; see *People v. Espino* (2024) 104 Cal.App.5th 188, 194 [de novo review whether the term "imposed" as used in § 1172.75 applies to cases where execution of a prior prison term enhancement was stayed]; accord, *Cox v. City of Oakland* (2025) 17 Cal.5th 362, 373 ["""The interpretation of a statute presents a question of law that the court reviews de novo."""].)

---

[3] Section 1172.75, subdivision (d)(3), provides further that "[t]he court may consider postconviction factors, including but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice." Section 1172.75, subdivision (d)(5), requires the sentencing court to appoint counsel for the defendant.

7

B.    *The Trial Court Did Not Err in Resentencing Silva to the Upper Term Without Proof of Aggravating Circumstances*

Silva contends the trial court erred in reimposing the upper term on count 1 for robbery without proof beyond a reasonable doubt of aggravating circumstances, in contravention of the amendments to section 1170(b)(2).  We agree with the Attorney General that the plain language of section 1172.75(d)(4) creates an exception to the heightened factfinding requirements where the defendant was previously sentenced to the upper term.  That exception applies here.

As amended by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3), effective January 1, 2022, section 1170(b)(2) provides, as relevant here, that "[t]he court may impose a sentence exceeding the middle term only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  Further, amended section 1170, subdivision (b)(3), provides as an exception to subdivision (b)(2) that "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (See *People v. Jones* (2022) 79 Cal.App.5th 37, 44, citing § 1170, subd. (b)(1)-(3).)[4]

---

[4]    As the Attorney General notes, the trial court cited Silva's prior felony conviction (for taking or driving a vehicle without the owner's consent) as an aggravating circumstance to support

"""'Our fundamental task in interpreting a statute is to determine the Legislature's intent so as to effectuate the law's purpose." [Citation.] "We first consider the words of the statutes, as statutory language is generally the most reliable indicator of legislation's intended purpose.""" (*Cox v. City of Oakland, supra*, 17 Cal.5th at p. 373; accord, *People v. Curiel* (2023) 15 Cal.5th 433, 461.) """[W]e look to "the entire substance of the statute . . . in order to determine the scope and purpose of the provision. . . . [Citation.]" [Citation.] That is, we construe the words in question "'in context, keeping in mind the nature and obvious purpose of the statute. . . . [Citation.]" [Citation.] We must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole.""""" (*Curiel*, at p. 461; accord, *People v. Nino* (June 4, 2025, No. B333606) __Cal.App.5th__ [2025 Cal. App. LEXIS 358, at p. *11].) """'If the words themselves are not ambiguous, we presume the Legislature meant what it said, and the statute's plain meaning governs. On the other hand, if the language allows more than one reasonable construction, we may look to such aids as the legislative history of the measure and maxims of statutory construction.""" (*People v. Cody* (2023) 92 Cal.App.5th 87, 101, quoting *Even Zohar Construction & Remodeling, Inc. v. Bellaire Townhouses, LLC* (2015) 61 Cal.4th 830, 838.)

Section 1172.75(d)(4) is clear and unambiguous. As discussed, the provision states, "*Unless the court originally*

reimposition of the upper term. However, the record does not contain a certified record of conviction for joyriding. We therefore focus only on whether the court was prohibited from imposing the upper term absent jury findings of aggravating circumstances.

9

*imposed the upper term*, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation . . ., and those facts have been stipulated to . . . or have been found true beyond a reasonable doubt . . . ." (Italics added.)  The only logical and grammatical reading of this provision is that the initial dependent clause starting with the word "[u]nless" creates an exception for sentences in which the upper term was originally imposed from the heightened factfinding requirements delineated in the independent clause ("[T]he court may not impose a sentence exceeding the middle term. . . .").  Moreover, had the Legislature intended to have the section 1170(b)(2) requirements apply to all resentencing hearings under section 1172.75, subdivision (d)(2), doing so would render surplusage the language in section 1172.75(d)(4) requiring heightened factfinding only for new upper term sentences.  As the *Brannon-Thompson* court reasoned, "We also 'generally must "accord[ ] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose," and [the Supreme Court] ha[s] warned that "[a] construction making some words surplusage is to be avoided."'" (*Brannon-Thompson, supra*, 104 Cal.App.5th at p. 466, citing *People v. Valencia* (2017) 3 Cal.5th 347, 357.)

The Third Appellate District in *Brannon-Thompson, supra*, 104 Cal.App.5th at pages 466 to 467 concluded, "Giving this language [in section 1172.75(d)(4)] its plain meaning, it is evident the Legislature intended the new burden of proof amendments to section 1170, subdivision (b) apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing.  [Section 1172.75(d)(4)] is, therefore, an exception to the general rule that the trial court must apply ameliorative

changes in the law at a section 1172.75 resentencing."  (See *Mathis, supra*, 111 Cal.App.5th at p. 374 ["[S]ection 1172.75 is not ambiguous because more specific legislative enactments control over general ones.  [Citation.]  And here, section 1172.75, subdivision (d)(2), addresses the general topic of changes in law, whereas subdivision (d)(4) of that statute more specifically deals with the new factfinding requirement, making clear that it does *not* apply where 'the court originally imposed the upper term.'"].)

Division Five of the First Appellate District in *Mathis, supra*, 111 Cal.App.5th at page 374 also rejected the argument that there was any ambiguity in section 1172.75(d)(4), explaining, "To be sure, absent language to the contrary in section 1172.75, section 1170, subdivision (b)'s amended sentencing scheme would apply to Mathis's resentencing because we presume that the Legislature intends ameliorative changes in sentencing law to apply in all cases that are nonfinal, including cases which became nonfinal due to resentencing.  [Citation.]  But the Legislature is also free to 'write statutes that provide for a different or more limited form of retroactivity, or for no retroactivity at all,' and it may 'disclaim the application of a new ameliorative law to proceedings that occur after a defendant's conviction or sentence has been vacated.'  [Citations.]  [Section 1172.75(d)(4)], does exactly that.  It expresses the Legislature's intent that the new, heightened factfinding requirements for aggravating factors do not apply where the defendant was originally, lawfully sentenced to an upper term."

The Sixth Appellate District in *Gonzalez, supra*, 107 Cal.App.5th at page 330 reached the opposite conclusion, reasoning that the interpretation adopted by the *Brannon-Thompson* court would violate the Sixth Amendment by allowing

11

a court to impose an upper term sentence without a jury finding beyond a reasonable doubt on facts necessary to impose the upper term.  The court acknowledged that section 1172.75(d)(4) "on its face, could be interpreted as not requiring proof of aggravating factors before reimposing an upper term sentence," as *Brannon-Thompson* concluded.  (*Gonzalez*, at pp. 328-329.)  But "another reasonable interpretation" was that section 1172.75(d)(4) "*restrict[ed] the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term," rather than creating any exception to the required jury factfinding on aggravating circumstances.  (*Gonzalez*, at p. 329.)  Under this interpretation, only a defendant originally sentenced to the upper term would be eligible for the upper term at resentencing, but even then, the defendant "could not receive it in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact."  (*Ibid*.)  Thus, a court could not sentence a defendant to an upper term unless the court originally imposed the upper term *and* a jury finds circumstances in aggravation.

The *Gonzalez* court reasoned that its interpretation was necessary to avoid a Sixth Amendment violation (an issue the *Brannon-Thompson* court did not address), as outlined by the Supreme Court in *People v. Lynch* (2024) 16 Cal.5th 730. (*Gonzalez, supra*, 107 Cal.App.5th at pp. 329-330.)  *Lynch* held with respect to the 2022 version of section 1170, subdivision (b), that "a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." (*Lynch*, at p. 768; see *Gonzalez*, at p. 330.)

The Court of Appeal in *Mathis, supra*, 111 Cal.App.5th at pages 372 to 373 rejected *Gonzalez*'s reasoning, observing that, as the Supreme Court explained in *Lynch, supra*, 16 Cal.5th at page 748, when the Legislature in 2007 amended section 1170, subdivision (b), the legislation granted "trial courts 'broad discretion' to choose between the lower, middle, and upper terms. [Citations.] That sentencing scheme, in effect when Mathis was originally sentenced, was one that "'everyone agrees'" raised no Sixth Amendment concerns." (*Mathis*, at p. 371, citing *Lynch*, at pp. 747-748.) Silva was likewise initially sentenced in 2016, when the 2007 version of section 1170, subdivision (b), was in effect.[5]

Like the courts in *Brannon-Thompson* and *Mathis*, we conclude the plain language of section 1172.75(d)(4) is amenable to only one reasonable interpretation: The Legislature intended that a sentencing court, after striking prior prison term enhancements in a section 1172.75 proceeding, may reimpose an upper term sentence without new, heightened factfinding requirements.

C.    *The Exception to the Factfinding Requirement in Section 1172.75(d)(4) Does Not Violate Equal Protection*

Silva contends that if we interpret section 1172.75(d)(4) to exempt previously imposed upper term sentences from

---

[5]    We do not reach whether the Sixth Amendment bars a court in a section 1172.75 resentencing from reimposing an upper term sentence without heightened factfinding in cases where the defendant was originally sentenced to the upper term before the effective date of the 2007 amendments to section 1170, subdivision (b).

13

section 1170(b)(2)'s heightened factfinding requirement, this interpretation would violate equal protection. Specifically, he argues, a defendant sentenced after the 2022 amendments to section 1170(b)(2) can only be sentenced to an upper term upon a jury finding of aggravating circumstances beyond a reasonable doubt (absent a stipulation or a record of a prior conviction), but a defendant like Silva who is resentenced under section 1172.75 may be sentenced to the upper term without a jury finding of aggravating circumstances if the upper term was previously imposed. There is no equal protection violation.

"""At core, the requirement of equal protection ensures that the government does not treat a group of people unequally without some justification."""" (*People v. Burgos* (2024) 16 Cal.5th 1, 29; accord, *People v. Hardin* (2024) 15 Cal.5th 834, 847.) "'The only pertinent inquiry is whether the challenged difference in treatment is adequately justified under the applicable standard of review. The burden is on the party challenging the law to show that it is not.'" (*Burgos*, at p. 29; accord, *Hardin*, at p. 847.) "'[W]hen a statute involves neither a suspect classification nor a fundamental right, the "general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest."'" (*Burgos*, at p. 29; see *People v. Sorto* (2024) 104 Cal.App.5th 435, 442 [applying rational basis review to juvenile offender's equal protection challenge to § 1170, subd. (d)(1)].) Silva concedes that rational basis review applies here.

"Under this deferential standard, we presume that a given statutory classification is valid 'until the challenger shows that no rational basis for the unequal treatment is reasonably

conceivable.' [Citation.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, nor 'be empirically substantiated.' [Citation.] Evaluating potential justifications for disparate treatment, a court reviewing a statute under this standard must 'treat the statute's potential logic and assumptions far more permissively than with other standards of constitutional or regulatory review.' [Citation.] 'If a plausible basis exists for the disparity, courts may not second-guess its "'wisdom, fairness, or logic.'"'" (*People v. Hardin, supra,* 15 Cal.5th at p. 852; accord, *People v. Williams* (2024) 17 Cal.5th 99, 124.) We review an equal protection claim de novo.[6] (*California Grocers Assn. v. City of Los Angeles* (2011) 52 Cal.4th 177, 208; see *People v. Sorto, supra,* 104 Cal.App.5th at p. 442 ["independently review[ing]" equal protection challenge to section 1170(d)(1)].)

Silva has not met his burden to show the Legislature had no rational basis for allowing a sentencing court to reimpose an upper term sentence in section 1172.75 proceedings without a

---

[6] The Attorney General argues Silva forfeited his equal protection challenge by failing to raise it in the trial court. We decline to find forfeiture given that at the time of Silva's resentencing, no appellate court had addressed the impact of section 1172.75(d)(4). (See *People v. Washington* (2021) 72 Cal.App.5th 453, 473 ["""neither forfeiture nor application of the forfeiture rule is automatic"""]; *id.* at p. 474 [declining to find forfeiture of equal protection challenge where it would have been impractical to raise the issue in the trial court]; *People v. Castellano* (2019) 33 Cal.App.5th 485, 489 [declining to find forfeiture of due process challenge where the challenge was based on recent appellate law and could not have reasonably been anticipated at trial].)

jury finding of aggravating circumstances notwithstanding the ameliorative changes under amended section 1170(b)(2).  The Legislature could have rationally concluded section 1172.75 advanced its goal to retroactively eliminate prior prison term enhancements while providing defendants the benefit of ameliorative changes to the law, including the factfinding requirements for imposition of a *new* upper term under subdivision (d), while conserving judicial resources by exempting existing upper term sentences from the new factfinding requirements.  (See *People v. Chatman* (2018) 4 Cal.5th 277, 290 ["Preserving the government's financial integrity and resources is a legitimate state interest."].)  Absent the exception in section 1172.75(d)(4), trial courts would be forced to order a jury trial on aggravating circumstances to support reimposition of the upper term, even where the court previously found the upper term was necessary to protect public safety.

Silva's reliance on *People v. Baltazar* (2020) 57 Cal.App.5th 334 is misplaced.  In *Baltazar*, the Court of Appeal rejected the defendant's contention that retroactive application of a 2018 law providing trial courts discretion whether to strike a firearm enhancement violated equal protection because the new law applied only to nonfinal judgments unless there was another jurisdictional basis for resentencing.  (*Id.* at pp. 341-342.)  The court explained, "A remand for the trial court to exercise its discretion whether to strike a firearm enhancement requires the expenditure of significant judicial, prosecutorial, and defense resources, in terms of both time and money. . . .  Because the Legislature could have rationally concluded it could sufficiently achieve these purposes, without unduly overburdening court and related resources, by limiting the applicability of [the new

legislation] to nonfinal judgments and to final judgments where the defendant was already returning to a lower court for resentencing under some other law, the law does not violate equal protection." (*Ibid.*)

Silva argues that unlike in *Baltazar*, the exception in section 1172.75(d)(4) for previously imposed upper term sentences does not conserve public resources because Silva was entitled to a full resentencing hearing regardless of whether the court was allowed to reimpose the upper term. On the contrary, although section 1172.75 requires judicial and agency resources (i.e., requiring identification of eligible inmates and a resentencing hearing), requiring a jury to find aggravating circumstances imposes an even greater burden.

## DISPOSITION

The February 5, 2024 order resentencing Silva is affirmed.


                                         FEUER, J.

We concur:



        SEGAL, Acting P. J.



        STONE, J.


17